LEONARD PRESTON, *Petitioner,*
*v.*
OREGON STATE PENITENTIARY, *Respondent.*
(No. 09-77-125, CA 9781)
583 P2d 9

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Petitioner was found guilty by a prison Disciplinary Committee of violating Major Rule No. 4, Assault. The committee recommended petitioner serve six months in segregation and forfeit 180 days' statutory good time. The committee's actions were approved by the superintendent. Petitioner makes four assignments of error: (1) the testimony of unnamed informants should not have been considered since there was no basis for finding the informants were credible or their statements reliable; (2) evidence derived from an impermissibly suggestive photographic display was erroneously considered by the disciplinary committee; (3) evidence of a polygraph examination was improperly received since no foundation was laid as to its reliability; and (4) the committee did not follow Corrections Division rules in recommending forfeiture of statutory good time.

Petitioner, along with several other inmates, allegedly assaulted inmate Reynolds. Petitioner denied he was involved in the assault. The principal evidence to support a finding of guilty came from statements of the victim and two unnamed informants, and the results of a polygraph examination administered to petitioner. Five named inmates, responding to questions posed by an investigator at the request of petitioner, said he was present but was not involved in the assault.

The hearing commenced on the basis of the initial report of a rule violation. The hearing was then recessed for further investigation. A report was received from Captain Good of the prison staff and a later report from staff member Pribble. Petitioner also submitted to a polygraph examination.

Captain Good's report disclosed he received information from confidential informants and the victim concerning the assault, and he summarized the information in his report. One of the informants indicated he could identify the seven inmates involved in the

assault. Captain Good then secured photographs of the seven named inmates and mixed these photographs in with those of 17 other inmates. This group of 24 photographs was shown to two informants and the victim. The first informant picked out seven photographs. The second informant and the victim each independently selected six photographs. The only difference in the photographs selected was that the first informant picked out an additional photograph.

Petitioner argues there is insufficient information in the record for the committee to conclude the unnamed informants are credible and their information reliable. He cites the report of staff member Pribble as the basis of this argument. Pribble's report, which was dated after Captain Good's report, set forth the substance of the information received from the informants. It was preceded by the notation "[a]dditional information received from inmate sources, some reliable in the past." The substance of this report was to exculpate two inmates who had been accused of the assault along with petitioner. The report recommended the charges against these two inmates be dismissed.

It is clear from the Disciplinary Committee's order that their finding of guilt was based on Captain Good's report and the results of the polygraph examination. Pribble's report was not considered. The committee found the independent selection by each informant and the victim of the same photographs establishes the reliability of their information.

■■■ There was sufficient information in the record for the committee to conclude the informants were credible and their information reliable. Although the test of OAR 291-40-115 (5)(e)(B) is phrased in terms of two requirements, i.e., that the informant is credible and his statement reliable, both requirements can be met by inferences from the same facts. Here the two unnamed informants and the victim independently gave information and identified the assailants. The

committee could have found the information given was correct and from that could infer that the informants were truthful. Although traditionally credibility of unnamed informants has been established by the prior performances of the informant in giving information, that is not the exclusive method; for example, as in this case, corroborating information from independent sources justifies an inference of credibility.

■ Petitioner next contends the prehearing photographic identification of him as one of the assailants was impermissibly suggestive and thus violated his constitutional rights to due process. Assuming, purely for the sake of argument, the same principles of due process that apply to criminal prosecutions apply to prison disciplinary hearings, we conclude the photographic display was not so suggestive as to raise a very substantial likelihood of irreparable misidentification. The evidence was properly received.

■ Petitioner's next contention relates to the polygraph examination he agreed to take. The results of the test, received in evidence, indicated the petitioner had responded deceptively to five specific questions regarding his involvement in the assault. The examiner concluded the answers were untruthful and that petitioner was involved in the assault.

Petitioner contends that, prior to receiving the polygraph examination results, a foundation should be laid respecting the questions asked, the responses given and whether the machine was working properly.

The examination was administered by a person licensed as a "general polygraph examiner" pursuant to ORS 703.010 to 703.990. *See Williams v. OSP,* 29 Or App 455, 564 P2d 706 (1977).

As indicated, the examiner's report to the Disciplinary Committee contained five of the actual questions asked petitioner during the examination. Petitioner's verbal answers were not recorded in the report. The opinion of the examiner that a person is deceptive is

[ 803 ]

not based on the verbal answers to the questions posed. The machine is designed to record the cardiovascular, respiratory and skin responses of the person being examined.[1] The conclusions of the examiner are based on the analysis of these recorded responses. The verbal responses to questions would be of little assistance in determining whether a person was deceptive or truthful. There was a sufficient foundation for admission of the results of the polygraph test that petitioner agreed to take.

■ Petitioner in his final assignment of error contends the Disciplinary Committee, in recommending forfeiture of statutory good time, did not indicate it followed the procedure set out in Rule 291-20-030(2). We decided this issue contrary to petitioner's contention in *Melton v. OSCI,* 34 Or App 951, 580 P2d 572 (1978).

Affirmed.

---

[1] ORS 703.310(1) provides:

"All instruments or mechanical devices that are used to test or question individuals for the purpose of detecting deception or of verifying the truth of statements made by the individuals at least shall record visually, permanently and simultaneously the cardiovascular pattern, the respiratory pattern and the galvanic skin response of each such individual. The patterns of other physiological changes of any such individual also may be recorded."