Owen VARNSON, Plaintiff
and Appellant,

v.

Winston E. SATRAN, Warden of the North Dakota State Penitentiary, and the North Dakota Parole Board, Defendants and Appellees.

Civ. No. 10787.

Supreme Court of North Dakota.

May 22, 1985.

Phillip J. Brown, Bismarck, for plaintiff and appellant.

Edwin F. Zuern, Sp. Asst. Atty. Gen., Bismarck, for defendants and appellees.

VANDE WALLE, Justice.

Owen Varnson appealed from a district court judgment denying his application for post-conviction relief. We affirm.

On November 3, 1983, Varnson, while serving a prison sentence, was searched by prison officials and marijuana was discovered. Varnson had returned to the State Farm from a work detail, and the marijuana was discovered in the pocket of a jacket Varnson carried from the van in which he and other inmates were returned to the State Farm. Varnson claimed that the jacket containing the marijuana belonged to another inmate, that he had grabbed it by mistake, and that he did not know the jacket contained marijuana when he carried it into the State Farm.

The matter was referred to the State Bureau of Criminal Investigation [BCI]. During the investigation, a BCI investigator asked Varnson if he would be willing to take a polygraph test. Varnson stated that he would, and that he would like to have one given to him prior to his scheduled appearance before the Parole Board on November 9, 1983.

At the Parole Board hearing, Varnson told the Board about the marijuana incident and that he would be taking a polygraph test in the near future. The Board issued the following order concerning Varnson:

"Eligible for parole March 1, 1984, to a satisfactory plan, PROVIDED the polygraph test exonerates inmate from any involvement in the drug incident at the NDSFarm. To serve out balance of sentence if polygraph test shows involvement in this crime."

Two polygraph tests were administered to Varnson and it was the polygraph operator's opinion that, during the second test, Varnson answered deceptively when questioned about his involvement in the marijuana incident.

On December 15, 1983, the prison Adjustment Committee found him guilty of violating a prison rule and recommended a loss of one month's "good time" and fifteen days in disciplinary segregation. Varn-

son's appeals to the Warden and the Director of Institutions were denied. In January 1984, Varnson again applied for parole. The Parole Board denied the request, stating:

"It was the decision of the Parole Board that they continue with their decision taken at the November 1983 Parole Board—that if you failed the polygraph test you are to serve out the balance of your sentence. PAROLE DENIED."

Varnson filed an application for habeas corpus relief with the United States District Court, which dismissed the application without prejudice for failure to exhaust State remedies. Varnson then filed an application in State court for post-conviction relief under Chapter 29–32, N.D.C.C., claiming, in essence, that it was a denial of his due-process rights for the penitentiary Adjustment Committee and the Parole Board to require him to submit to a polygraph examination and to rely solely on the results of the test in finding him guilty of the offense and in denying his request for parole.

Following a hearing at which all of the evidence introduced was documentary in nature, the district court found that the polygraph tests were "voluntary and not required by either the Penitentiary Adjustment Committee or the Parole Board," and that Varnson "showed an intention to rely upon the polygraph test." The court also found that:

"The polygraph result was only one of the factors relied upon by the Penitentiary Adjustment Committee, the Parole Board, and others in the appeal process. All the facts surrounding the incident and the investigation were considered."

The district court concluded that, under these circumstances, it was not a denial of Varnson's due-process rights for either the Adjustment Committee or the Parole Board to consider the results of the polygraph examination, with the other evidence, in arriving at their respective decisions. A judgment was entered dismissing the application for post-conviction relief, and Varnson appeals.

We have been informed that Varnson has been released from prison. The appellees contended during oral arguments that Varnson's claim is therefore moot.

■ A case is moot when a determination is sought which, when rendered, cannot have any practical legal effect upon a then-existing controversy. *State ex rel. Clarke v. Carballo*, 83 Wis.2d 349, 265 N.W.2d 285 (1978). See generally *St. Pierre v. United States*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943); *State v. Patten*, 366 N.W.2d 459 (N.D.1985); *Wahpeton Public School District v. North Dakota Ed. Ass'n*, 166 N.W.2d 389 (N.D. 1969); *Schwarz v. Thoreson*, 70 N.D. 552, 296 N.W. 420 (1941).

■ Varnson was sentenced to the State Penitentiary for a term of three years. The sentence further provides:

"18 months of said sentence to be suspended for a period of 3 years from date of release from incarceration. Supervised probation.

"Defendant to be considered for parole after serving 6 months."

Varnson's "date of release from incarceration" was delayed by several months as a result of the drug incident and the subsequent actions of the Adjustment Committee and Parole Board. Therefore, under the specific terms of his sentence, Varnson will remain subject to supervised probation for several months more than if he had been released from incarceration on an earlier date. During a period of probation, the State maintains some incidence of control over the probationer's conduct. See generally *State v. Perbix*, 331 N.W.2d 14 (N.D. 1983). It cannot be said that a ruling in this case would have no "practical legal effect" on Varnson. We therefore conclude that the questions raised by Varnson in this appeal are not moot.

Varnson challenges the district court's finding that the polygraph results were only one of the factors relied upon by the Adjustment Committee, the Parole Board, and others in the appeal process. Varnson asserts that the Parole Board's written or-

ders and other written communications between Varnson and prison officials establish that the Adjustment Committee and Parole Board relied solely on the results of the polygraph examination in finding that he committed the offense and in denying his March 1, 1984, parole-release date.

■ Post-conviction relief proceedings are civil in nature [see *State v. Jensen*, 333 N.W.2d 686 (N.D.1983)], and all rules and statutes applicable in civil proceedings are available to the parties. Sec. 29–32–07, N.D.C.C.; *State v. Lueder*, 252 N.W.2d 861 (N.D.1977) [Rule 56, N.D.R.Civ.P., and decisions interpreting the rule are applicable in post-conviction proceedings]. We therefore conclude that in an appeal brought under the provisions of the Uniform Post-Conviction Procedure Act, a district court's findings of fact will not be disturbed unless they are clearly erroneous. Rule 52(a), N.D.R.Civ.P.; see *Holmes v. State*, 104 Idaho 312, 658 P.2d 983 (Ct.App.1983); *Bartholomew v. Cupp*, 13 Or.App. 436, 510 P.2d 355 (1973); *State v. Duggan*, 414 A.2d 788 (R.I.1980); *Miller v. State*, 338 N.W.2d 673 (S.D.1983).[1] However, this court has held that where the findings of the trial court rest solely upon documentary evidence, as distinguished from oral testimony, we are not bound by Rule 52(a), N.D.R. Civ.P., in reviewing those findings and are as capable of reading and understanding the documentary evidence as is the trial court. E.g., *Krohnke v. Lemer*, 300 N.W.2d 246 (N.D.1980); *Dolajak v. State Auto. & Casualty Underwriters*, 252 N.W.2d 180 (N.D.1977). *But see Anderson v. City of Bessemer City*, —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) [Rule 52(a), F.R.Civ.P., applicable to review of factual findings based entirely on physical or documentary evidence]. Whether or not we apply Rule 52(a) is inconsequential in this case because, under either standard of review, we agree with the district court's findings of fact.

Although the Parole Board's orders and some written communications between Varnson and prison officials suggest that the results of the polygraph examination were the sole determining factor, these documents must be viewed in light of the entire record. The record reflects that the Adjustment Committee held a hearing during which it considered, in addition to the polygraph-examination results, an incident report prepared by the prison employee who searched Varnson and discovered the marijuana, an investigative report of the incident prepared by a BCI officer, and Varnson's own statement about the incident. Bill Broer, Deputy Warden at the Penitentiary and chairman of the prison disciplinary committee, stated by affidavit that the committee "performed its own fact finding function with a formal hearing," and that "[b]ased upon the fact that he [Varnson] carried the jacket with the contraband controlled substance and indicated some knowledge of it coming in, along with the report of the State's Bureau investigation and the polygraph results, we found him guilty of violating our prison rule as charged." Broer stated that the polygraph test "simply added further proof to what the evidence revealed."

Varnson appeared at the Parole Board's November 1983 meeting and informed the Board members about the incident. When Varnson applied for parole in January 1984, the Board was presumably aware of the Adjustment Committee's previous action on the matter. James Marion, the Chief Parole Officer and Clerk of the Parole Board, stated by affidavit that the results of the polygraph test were among the factors considered by the Board in denying parole to Varnson, but that the test results did not necessarily influence the Board's decision to deny parole. Marion stated that there was sufficient evidence of Varnson's violation of the penitentiary rules to justify the Board's decision, regardless of the test results.

We have reviewed the record and are satisfied that the polygraph results were not the only evidence considered by the

---

**1.** The South Dakota Legislature repealed its version of the Uniform Post-Conviction Procedure Act in 1983. See 1983 S.D.Sess.Laws Ch. 169, § 15.

Adjustment Committee, Parole Board, and other prison officials in reaching their decisions.

Varnson next asserts that consideration of the polygraph test results by the Adjustment Committee and Parole Board constituted a denial of his due-process rights under the State and Federal Constitutions. He contends that whether or not he voluntarily took the test, or even requested it, is irrelevant because polygraph test results are inherently unreliable and incompetent evidence. Varnson contends, in effect, that polygraph test results should not be admissible in prison disciplinary proceedings or parole-release hearings under any circumstances.

This court has held that the results of a polygraph examination are not admissible in a criminal trial. *State v. Pusch*, 77 N.D. 860, 46 N.W.2d 508 (1950). See also *State v. Swanson*, 225 N.W.2d 283 (N.D.1974). However, in *State v. Yodsnukis*, 281 N.W.2d 255 (N.D.1979), and *State v. Olmstead*, 261 N.W.2d 880 (N.D.), *cert. denied*, 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978), we held that where the prosecution and defense have stipulated to the admissibility of the results of a polygraph examination for the purposes of a motion for a new trial, the court must consider the results in determining the merits of the motion.

Varnson relies on cases from other jurisdictions which address the admissibility of polygraph test results in civil, criminal, and administrative [2] proceedings. We find none of these decisions particularly persuasive on the question before us, because prison disciplinary hearings and parole-release hearings differ significantly from those proceedings.

■ Due process does not require a State to provide full-blown adversary hearings, complete with the panoply of rights and procedural safeguards designed for free citizens in an open society, in either prison disciplinary proceedings [see *Hewitt*

*v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Jensen v. Satran*, 332 N.W.2d 222 (N.D.1983) ] or in parole-release proceedings [see *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Hodges v. O'Brien*, 589 F.Supp. 1225 (D.Kan.1984) ]. In the context of prison disciplinary proceedings, it has been observed that:

"A disciplinary hearing is neither a civil nor a criminal proceeding. As a consequence, the formal rules of evidence observed in criminal and civil trials do not apply. Courts have also rejected the argument that a disciplinary hearing must conform to the evidentiary requirements of the Administrative Procedure Act. The end result appears to be that disciplinary hearings are sui generis, governed by neither the evidentiary rules of a civil trial, a criminal trial, nor an administrative hearing. The only limitations appear to be those imposed by due process, statute, or administrative regulations." [Footnotes omitted.] J. Gobert and N. Cohen, Rights of Prisoners § 8.07, at p. 243 (1981).

It appears that few jurisdictions have addressed the use of polygraph examinations in a prison setting. In *Lavine v. Wright*, 423 F.Supp. 357, 366 (D.Utah 1976), the court approved the use of a polygraph examination as a condition to an inmate's progression through the prison's classification system, but in so holding noted "the fundamental difference in the nature and purposes of disciplinary and classification proceedings, ... "

In the context of prison disciplinary proceedings, most cases have involved inmate claims which are the virtual antithesis of Varnson's assertion in this case. In these cases, inmates contended that they were denied due process because prison officials did not grant their requests for a poly-

---

**2.** We note that neither the prison Adjustment Committee nor the Parole Board are governed by the provisions of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C. See § 28–32–01(1)(m) and (p), N.D.C.C.

graph examination and thereby denied them an opportunity to exonerate themselves. See *United States ex rel. Wilson v. DeRobertis*, 508 F.Supp. 360 (N.D.Ill. 1981); *Bishop v. Oregon State Penitentiary, Corrections Division*, 35 Or.App. 315, 581 P.2d 122 (1978); *Allen v. Oregon State Penitentiary, Etc.*, 33 Or.App. 427, 576 P.2d 831 (1978); *Sandlin v. Oregon Women's Correctional Center, etc.*, 28 Or.App. 519, 559 P.2d 1308 (1977);[3] *Pruitt v. State*, 274 S.C. 565, 266 S.E.2d 779, *cert. denied*, 449 U.S. 1036, 101 S.Ct. 613, 66 L.Ed.2d 498 (1980). The import of these cases is that due process does not require prison officials to grant an inmate's request for a polygraph examination, but that the decision to give a polygraph test or to admit the results in evidence in a disciplinary proceeding lies within the discretion of the disciplinary committee. The court in *DeRobertis, supra*, 508 F.Supp. at 362, even suggested that "such procedures may at times be necessary to ensure fundamental fairness, ..."

In light of the authorities which have addressed due-process concerns regarding the use of polygraph evidence in prison proceedings, we are not persuaded that due process under the Fourteenth Amendment or our State Constitution forbids, under all circumstances, a prison disciplinary committee or parole board from considering the results of a polygraph examination. To create a blanket prohibition on the use of polygraph evidence in prison proceedings, while allowing the use of such evidence under certain circumstances in judicial proceedings [see *Yodsnukis, supra; Olmstead, supra* ], would be anomalous indeed.

The evidence reflects that Varnson was not required by either the Adjustment Committee or the Parole Board to submit to the polygraph test. Rather, Varnson voluntarily took the test and indicated to the Parole Board that he would rely on its results. The Adjustment Committee and the Parole Board did not rely solely on the polygraph test results, but also considered the incident report, the investigative report, and Varnson's statement concerning the incident. Under these circumstances, we conclude that the consideration by the Adjustment Committee and the Parole Board of the polygraph test results did not constitute a denial of Varnson's due-process rights.

Varnson has argued that the Adjustment Committee and Parole Board, by relying on the results of the polygraph test, are in effect delegating their responsibilities to a machine and are thereby allowing the polygraph examination to usurp their fact-finding function. As we have already noted, the evidence in this case establishes that the polygraph examination was only one of several factors considered by the Adjustment Committee and Parole Board in reaching their decisions. If in fact the evidence established that prison officials or the Parole Board were basing disciplinary decisions or parole-release determinations solely on the results of polygraph examinations, we would have serious reservations about the propriety of such a procedure and our conclusion might well be different.

The judgment is affirmed.

ERICKSTAD, C.J., and LEVIN, MESCHKE and GIERKE, JJ., concur.

---

[3]. Oregon courts have held that, under their statutory scheme, polygraph evidence is not admissible in prison disciplinary hearings absent a foundation consisting of the qualifications of the examiner. *Herron v. Oregon State Penitentiary, Corrections Division*, 48 Or.App. 597, 617 P.2d 320 (1980); *Armas v. Oregon State Penitentiary, Corrections Division*, 42 Or.App. 717, 601 P.2d 843 (1979); *Preston v. Oregon State Penitentiary, Corrections Division*, 35 Or.App. 799, 583 P.2d 9 (1978); *Williams v. Oregon State Penitentiary, Corrections Division*, 29 Or.App. 455, 564 P.2d 706 (1977). We also note that the Court of Appeals of Iowa has ruled that an inmate was not denied due process by a prison disciplinary committee's refusal to allow him to question the polygraph operator whose report was used against him at a disciplinary hearing. *Bucklin v. State*, 342 N.W.2d 896 (Iowa Ct.App. 1983). Varnson has not challenged the foundational aspects of the polygraph test results in this case.