Dennis C. HOULE, Petitioner
and Appellant,

v.

STATE of North Dakota, Respondent
and Appellee.

Cr. No. 910248.

Supreme Court of North Dakota.

March 3, 1992.

As Corrected March 6, 1992.

Feldner Law Firm, Mandan, for petitioner and appellant; argued by Rodney K. Feldner.

Bruce B. Haskell (argued), Asst. States Atty., Bismarck, for respondent and appellee.

ERICKSTAD, Chief Justice.

Dennis Houle appeals from the order of the District Court for Burleigh County, denying his application for post-conviction relief. We affirm.

On July 2, 1980, Houle entered pleas of guilty to the class C felony charge of burglary and the class AA felony charge of murder pursuant to a plea agreement. In accordance with the plea arrangement, Houle was sentenced to one year on the burglary charge and fifty years on the murder charge to run concurrently. On August 9, 1990, Houle, acting pro se, made various motions to the district court seeking, among other things, a writ of habeas corpus. In an application, dated October 20, 1990, Houle requested court-appointed counsel. On or about October 26, 1990, Rodney K. Feldner was appointed to represent Houle. On March 4, 1991, Houle, through his newly appointed counsel, applied for post-conviction relief pursuant to

section 29–32.1–01, N.D.C.C.,[1] or, in the alternative, sought to withdraw his plea pursuant to Rule 32(d), N.D.R.Crim.P.,[2] asserting, as a basis for such relief, ineffective assistance of counsel and the failure of the sentencing judge to advise Houle of the effective minimum sentence arising due to the parole ineligibility period. After a hearing held on July 11, 1991, the district court denied Houle's application for post-conviction relief. This appeal followed.

■ When a person seeks to withdraw a guilty plea under the Post–Conviction Relief Act (ch. 29–32.1, N.D.C.C.), the action is generally treated as a Rule 32(d), N.D.R.Crim.P., motion. *State v. Boushee,* 459 N.W.2d 552, 555–556 (N.D.1990). Accordingly, a withdrawal of a guilty plea is allowed when necessary to correct a "manifest injustice." *Id.* at 556. "The determination of manifest injustice is ordinarily within the trial court's discretion, and will be reversed on appeal only for an abuse of discretion." *Id.* "An abuse of discretion occurs when the court fails to exercise its discretion in the interests of justice." *State v. Millner,* 409 N.W.2d 642, 643 (N.D.1987).

■ Although on appeal our standard of review remains whether or not the trial court abused its discretion, to help us in making this determination we may be required to review the trial court's preliminary findings of fact. *See generally State v. Saavedra,* 406 N.W.2d 667, 669 (N.D. 1987). We have previously noted that actions for post-conviction relief under chapter 29–32.1, N.D.C.C., are essentially civil in nature. *Varnson v. Satran,* 368 N.W.2d 533, 536 (N.D.1985). As such, a trial court's findings of fact in actions for

1. Section 29–32.1–01, N.D.C.C., reads:
"*29–32.1–01. Remedy—To whom available—Conditions.*
1. A person who has been convicted of and sentenced for a crime may institute a proceeding applying for relief under this chapter upon the ground that:
a. The conviction was obtained or the sentence was imposed in violation of the laws or the Constitution of the United States or of the laws or Constitution of North Dakota;
b. The conviction was obtained under a statute that is in violation of the Constitution of the United States or the Constitution of North Dakota, or that the conduct for which the applicant was prosecuted is constitutionally protected;
c. The court that rendered the judgment of conviction and sentence was without jurisdiction over the person of the applicant or the subject matter;
d. The sentence is not authorized by law;
e. Evidence, not previously presented and heard, exists requiring vacation of the conviction or sentence in the interest of justice;
f. A significant change in substantive or procedural law has occurred which, in the interest of justice, should be applied retrospectively;
g. The sentence has expired, probation or parole or conditional release was unlawfully revoked, or the applicant is otherwise unlawfully in custody or restrained; or
h. The conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error available before July 1, 1985, under any common law, statutory or other writ, motion, proceeding, or remedy.
2. A proceeding under this chapter is not a substitute for and does not affect any remedy incident to the prosecution in the trial court or direct review of the judgment of conviction or sentence in an appellate court. Except as otherwise provided in this chapter, a proceeding under this chapter replaces all other common law, statutory, or other remedies available before July 1, 1985, for collaterally challenging the validity of the judgment of conviction or sentence. It is to be used exclusively in place of them. A proceeding under this chapter is not available to provide relief for disciplinary measures, custodial treatment, or other violations of civil rights of a convicted person occurring after the imposition of sentence."

2. Rule 32(d), N.D.R.Crim.P., reads:
"*(d) Plea Withdrawal.*
(1) The court shall allow the defendant to withdraw a plea of guilty whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice.
(2) A motion for withdrawal is timely if made with due diligence, considering the nature of the allegations therein, and is not necessarily barred because made subsequent to judgment or sentence.
(3) In the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw a plea of guilty as a matter of right once the plea has been accepted by the court. Before sentence, the court in its discretion may allow the defendant to withdraw a plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea."

post-conviction relief under chapter 29–32.1 will not be disturbed unless clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P.[3] *Id.*

■ In this case, Houle seeks to withdraw his guilty plea. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)).

■ As a basis for withdrawing his guilty plea, Houle first asserts ineffective assistance of counsel. Specifically, Houle asserts that his defense counsel, Benjamin Pulkrabek, did not discuss with him the possibility of lesser-included offense instructions. In support of this assertion, Houle argues that he had nothing to lose in going to trial, and that he gained nothing of significance by pleading guilty. This is not true. Had he been convicted of murder, a class AA felony pursuant to section 12.1–16–01(1), he could have been sentenced to life imprisonment, or, had he been convicted of murder, a class A felony pursuant to section 12.1–16–01(2), he could have been sentenced to life imprisonment under section 12.1–32–09(1)(e) and (2), N.D.C.C., relating to extended sentences for dangerous special offenders.

The Sixth Amendment of the United States Constitution, applied to the states through the Fourteenth Amendment of the United States Constitution, and Section 12, Article I of the North Dakota Constitution guarantee criminal defendants the right to reasonably effective assistance of counsel. *State v. Micko,* 393 N.W.2d 741, 746 (N.D. 1986). In assessing the alleged ineffective assistance of counsel, the United States Supreme Court has announced a two-part test. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland* standard, a "defendant must show that counsel's representation fell below an objective standard of reasonableness" *and* that the defendant was prejudiced by such ineffective representation, that is "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* 104 S.Ct. at 2064, 2068.

The *Strickland* standard applies in cases where a criminal defendant seeks to withdraw a guilty plea based on alleged error on the part of his counsel as well as where the alleged error or deficiency has resulted in a criminal conviction after trial. In *Hill v. Lockhart,* the United States Supreme Court said:

"We hold, therefore, that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson, supra,* [411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)] and *McMann v. Richardson, supra.* [397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)] The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. 52, 58–59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

Our first inquiry under *Strickland* and *Lockhart* focuses on the reasonable effec-

---

**3.** Although Rule 52(a), N.D.R.Civ.P., would not technically apply in a Rule 32(d), N.D.R.Crim. P., motion to withdraw a plea of guilty, we have stated that "the clearly erroneous test which it sets forth, or a facsimile thereof, is applied in both civil and criminal proceedings." *State v. Padgett,* 393 N.W.2d 754, 757 (N.D.1986); *see* *also State v. Olmstead,* 246 N.W.2d 888, 890 (N.D.1976). Thus, whether or not this action is viewed as one under Rule 32(d), or under ch. 29–32.1, N.D.C.C., would not change our review of the trial court's preliminary findings of fact in this case.

tiveness of the defendant's trial counsel " 'under prevailing professional norms,' considering all the circumstances from the defense counsel's perspective at the time." *State v. Thompson*, 359 N.W.2d 374, 377 (N.D.1985) (quoting *Strickland*, 104 S.Ct. at 2065). Furthermore, "because it is all too easy to second-guess an unsuccessful counsel's defense through the distorting effects of hindsight, in making that inquiry 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. Thompson*, 359 N.W.2d at 377 (quoting *Strickland*, 104 S.Ct. at 2065).

In this case, the trial court found as a matter of fact that the issue of a lesser-included offense instruction was discussed with Houle. Benjamin Pulkrabek testified at the post-conviction relief hearing that he did discuss the possibility of lesser-included offense instructions with Houle. Furthermore, as the trial court noted, there was a set of proposed jury instructions which Pulkrabek had filed with the court which set out the elements of lesser-included offenses. In light of the above, we conclude that the trial court's finding that Houle's attorney did advise him that he could request that the court instruct the jury on lesser-included offenses and Houle never-the-less decided to accept the plea agreement is not clearly erroneous.[4]

Given the resolution of this factual issue, and after further careful review of the

4. Benjamin Pulkrabek testified at the post-conviction hearing in part as follows:

"Q. Were any of those discussions with regard to the possibility of a plea or a jury verdict on a lesser included offense?

"A. The way that the discussion would normally go is Mr. Houle would tell me, would not a jury believe me that I didn't know the gun was going to fire. I would explain to him the possibilities of lesser included. I am the one who requested all of the lesser included instructions in this case and they're on file with the Court. When we would go through this I would ask Mr. Houle what he had done. The story that he would reveal as to what he did with the gun was a little different each time. He has in my file two reports as to what he said he did with the gun in Jamestown and those differ. You have reports in your file where one time he said there were four bullets in the gun, another time he said there were two. The best that he told me is he figured it wouldn't fire. This is a revolver. We know that there was at least two shells in the cylinders, from what he told me you had to use some kind of a stick to get it out, it was his. He was never able to tell me where he thought the bullets were when he put the gun to her head, he basically can say he thought it would not fire. The stories are different as to whether he opened the gun, what he did. In Jamestown for instance he said he spun the cylinder, and in one of the statements you have he spun the cylinder and this, I believe, is not Mr. Houle it was somebody else, spun the cylinder before it stopped he closed it. So then we get down to what you we're talking about here and the thing that it is charged out under recklessly would be a situation that would be the same instruction, the same definition would be used on the two offenses. It was my opinion in light of that and other factors that we went into such as his drug usage which I have in regard to that I believe we went through insanity, there are papers in the file with his signature to show that. We discussed insanity and I felt that we had a best chance on that because on the day in question he used six phenol barbital pills and a half a quart of whiskey. I thought he probably did not know what he was doing, Jamestown Hospital said that he did. I will still dispute that but anyhow we went through that and I told him that in my opinion the jury, I didn't feel, would ever believe that what he did was not going to be a murder conviction because he did not know where the bullets were and obviously he was—if he didn't, if he didn't know I think pointing a loaded gun at someone's head and pulling the trigger. He told me outright he intended to pull the trigger, he intended to have the hammer come down. So we went through all of that and we also, we did talk about lesser included many times but he always said the jury will never convict him of murder because I'm going to tell them I didn't know the gun would go off.

"Q. Now, obviously, Mr. Sletten in the State's Attorney's office would not have been privy to those conversations; is that correct?

"A. Mr. Sletten, as far as I know, his only contact with Mr. Houle would have been a statement that he made I believe at Dickinson I think you have that in your file, I don't believe that Mr. Sletten ever talked to him. I would never have allowed it.

"Q. And you never pointed out to Mr. Sletten the discrepancies in the various stories the defendant gave?

"A. No, I did not. And at the day the sentencing came out when he got up and made that statement I was not about to say they have on record here where he said three or four different ways."

record, we conclude that Houle has failed to establish that his counsel's representation was constitutionally deficient.[5]

■ The next issue Houle asserts as a basis for withdrawing his guilty plea is that the court did not inform him of the minimum sentence he would have to serve in connection with his plea. Essentially, Houle argues that, although the statute he was sentenced under did not contain a specific minimum sentence, a separate parole eligibility provision created an "effective" minimum sentence. Thus, Houle argues that his plea was involuntary and accepted in violation of Rule 11, N.D.R.Crim.P.

Rule 11 of the North Dakota Rules of Criminal Procedure, based upon Rule 11 of the Federal Rules of Criminal Procedure, reads, in part, as follows:

*"(b) Advice to Defendant.* The court may not accept a plea of guilty without first, by addressing the defendant personally [except as provided in Rule 43(c) ] in open court, informing the defendant of and determining that the defendant understands the following:

(1) The nature of the charge to which the plea is offered;

(2) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered;

(3) That the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty;

(4) That if the defendant pleads guilty there will not be a further trial of any kind, so that by pleading guilty the defendant waives the right to a trial by jury or otherwise and the right to be confronted with adverse witnesses; and

(5) If the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding against the defendant and, if necessary, one will be appointed to represent the defendant, as provided in Rule 44, North Dakota Rules of Criminal Procedure.

*"(c) Insuring That the Plea is Voluntary.* The court shall not accept a plea of guilty without first, by addressing the defendant personally [except as provided in Rule 43(c) ] in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the de-

---

**5.** We also note that the trial court found as a matter of fact that Pulkrabek discussed the parole implications of the plea agreement with Houle. At the post-conviction hearing Pulkrabek testified as follows:

"Q. Now on its face the plea agreement that was come to between yourself and your client and the State doesn't appear to be that good a deal.

"A. No, initially, Mr. Sletten had given another situation where it would have been a 40-year plea and—but it would be an open plea where the Court could have given him life and I discussed that with—with Mr. Houle and we—I told him I would not recommend that he accept that because there would be a possibility of life and then we brought this other agreement back to Mr. Houle and at that time I discussed with him this 20 years of actual time that he would have to be there— and I've also discussed that with his attorney Mr. Feldner—that's the only time I remember clear as day about this file before I reopened it and read it is I was talking to Mr. Houle and he said, but if I take this I will have to do 20 years before I can get out and I'll be an old man, I'll be 38 years old. And I said, you

think 38 is old? And he said, yes, it is. And I said, well, I'm 39. And he thought about that and later he decided that I was not that old so then he was going to take that.

"Q. When you say 'take that' are you—

"A. He was going to take that particular plea agreement."

Pulkabrek was apparently speaking of the 30 years with 10 years good time available then under section 12–54.1–01(5), N.D.C.C., which read:

"12–54.1–01. *Good conduct sentence reduction.* Offenders sentenced to the penitentiary or state farm shall be eligible to earn good conduct sentence reductions. Whenever two or more sentences have been imposed upon an offender, the aggregate of the several sentences shall be the basis for determining the rate of reduction. Sentences may be reduced at the following rates:

\* \* \* \* \* \*

5. Ten days per month on a sentence of ten years or more."

Section 12–54.1–01, N.D.C.C., was subsequently amended by the 1991 Legislature. *See* 1991 S.L., ch. 118 § 1.

fendant's willingness to plead guilty results from previous discussion between the prosecuting attorney and the defendant or the defendant's attorney."

Subsections (b) and (c) of Rule 11 largely "ensure that a defendant who pleads guilty has made an informed [and voluntary] plea." *State v. Storbakken,* 246 N.W.2d 78, 82 n. 4 (N.D.1976). These provisions, to a large extent, incorporate in our Rules of Criminal Procedure a number of federal constitutional principles which have arisen in the context of courts accepting guilty pleas. *See State v. Hagemann,* 326 N.W.2d 861, 864–865 (N.D.1982); *see also Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).[6]

This Court has previously said that the "procedures of Rule 11 are mandatory and binding upon the court." *State v. Schumacher,* 452 N.W.2d 345, 346 (N.D.1990). This includes the requirement that a trial court must personally advise the defendant of any minimum and maximum punishment provided by the statute defining the offense for which the plea is offered. *Id.*

In this case, Houle plead guilty to the class AA felony charge of murder set forth in section 12.1–16–01, N.D.C.C. The general penalty provisions for criminal acts are set forth in section 12.1–32–01, N.D.C.C. The penalty provisions for class AA felonies provide:

"1. Class AA felony, for which a maximum penalty of life imprisonment may be imposed. Notwithstanding the provisions of section 12–59–05, a person found guilty of a class AA felony shall not be eligible to have his sentence considered by the parole board for thirty years, less sentence reduction earned for good conduct, after his admission to the penitentiary."

Section 12.1–32–01, N.D.C.C.

From the above, it is clear that there is no mandatory minimum punishment which *must* be imposed for a class AA felony. Rather, section 12.1–32–01(1), N.D.C.C., merely establishes a period of parole ineligibility.

Houle argues that the period of parole ineligibility was a consequence of his plea which the trial court was required to inform him of under Rule 11. In support of his argument, Houle cites a number of "older" federal decisions which held that Rule 11 of the Federal Rules of Criminal Procedure required a court to inform a defendant of the parole consequences of a guilty plea. However, we note the following from the Advisory Committee notes

**6.** In *Boykin v. Alabama,* the United States Supreme Court stated:

"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment.

\*    \*    \*    \*    \*    \*

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. · *Malloy v. Hogan,* 378 US 1, 12 L Ed 2d 653, 84 S Ct 1489. Second, is the right to trial by jury. *Duncan v. Louisiana,* 391 US 145, 20 L Ed 2d 491, 88 S Ct 1444 [ (1968) ]. Third, is the right to confront one's accusers. *Pointer v. Texas,* 380 US 400, 13 L Ed 2d 923, 85 S Ct 1065 [ (1965) ]. We cannot presume a waiver of these three important federal rights from a silent record." 395 U.S. 238, 242–243, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969). Also, in *Brady v. Unit-*

*ed States,* the United States Supreme Court stated:

"That a guilty plea is a grave and solemn act to be accepted only with care and discernment has long been recognized. Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so—hence the minimum requirement that his plea be the voluntary expression of his own choice. But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge. Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." 397 U.S. 742, 748, 90 S.Ct. 1463, 1468–1469, 25 L.Ed.2d 747 (1970).

accompanying the 1974 amendments to Rule 11 of the Federal Rules:

"It has been suggested that it is desirable to inform a defendant of additional consequences which might follow from his plea of guilty. *Durant v. United States,* 410 F.2d 689 (1st Cir.1969), held that a defendant must be informed of his ineligibility for parole. *Trujillo v. United States,* 377 F.2d 266 (5th Cir.1967), cert. denied 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967), held that advice about eligibility for parole is not required.

\* \* \* \* \* \*

"Under the rule the judge is not required to inform a defendant about these matters, though a judge is free to do so if he feels a consequence of a plea of guilty in a particular case is likely to be of real significance to the defendant."

*See* 18 U.S.C.A. Rule 11 at 348. We also, note the following from *Hill v. Lockhart:*

"We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in the federal courts. See Fed.Rule Crim.Proc. 11(c); Advisory Committee's Notes on 1974 Amendment to Fed.Rule Crim.Proc. 11...."

474 U.S. at 56, 106 S.Ct. at 369, 88 L.Ed.2d 203.

Lastly, we note the following from *United States v. Sanclemente–Bejarano:*

"In addition, every other circuit that has addressed the question has interpreted new Rule 11 consistently with the Advisory Committee Notes. *Johnson v. United States,* 650 F.2d 1, 4 (1st Cir.1981); *United States v. Garcia,* 636 F.2d 122, 123 (5th Cir.1981) (per curiam); *Hunter v. Fogg,* 616 F.2d 55, 61 (2d Cir.1980).

"The observations of the Supreme Court and the Advisory Committee, and the holdings of other circuit courts leave little doubt as to the effect of the 1974 amendment. Accordingly, we hold that Rule 11 does not require the trial court to notify a defendant of parole eligibility before accepting his guilty plea."

861 F.2d 206, 209 (9th Cir.1988).

In general terms, before a plea can intelligently and voluntarily be offered, the defendant must be informed of all "direct consequences" of his plea, but need not be advised of "collateral consequences." *See* LaFave, *Criminal Procedure,* Vol. II, section 20.4(d) (1984). As noted above, under Rule 11 of the Federal Rules of Criminal Procedure, parole eligibility is considered a collateral consequence. Additionally, as the United States Supreme Court alluded to in *Hill v. Lockhart,* parole eligibility is, as a general rule, a collateral consequence for federal constitutional purposes.

In accordance with aforementioned federal authority, we conclude that the failure of the sentencing judge to advise Houle of the parole eligibility provision was not a violation of Rule 11, N.D.R.Crim.P., nor did it affect the voluntariness of the plea.[7] Notwithstanding, to avoid having this issue arise in the future, we urge trial judges in the future to inform defendants of parole

---

**7.** Although we conclude that parole eligibility is, as a general rule, a collateral consequence of a guilty plea for which a defendant need not be informed, we nevertheless note that, in this case, Houle was substantially aware of the parole consequences of his plea. At Houle's preliminary hearing we note the following:

"THE COURT [Burleigh County Court Judge Burt Riskedahl]:....

Before we conclude the hearing, I'm aware at the time of your initial appearance, Mr. Houle, that I advised you of the maximum penalty for this violation, which is life imprisonment. I noticed, after that initial appearance, that Section 12.1–32–01, which is the penalty clause dealing with class AA felonies,

has further language in it, and I wanted to be sure you were advised of that before you were held to answer. That language is to the effect that a person found guilty of a class AA felony shall not be eligible to have his sentence considered by the parole board for 30 years, less sentence reduction earned for good conduct, after his admission to the penitentiary."

At Houle's arraignment we note the following exchange:

"THE COURT [Burleigh County District Court Judge Benny Graff]: Mr. Houle, the Information essentially charges you with committing the crime of murder by causing the death of one Sherri Katherine Collins in the manner described in the Criminal Infor-

ineligibility features of the North Dakota Century Code, and that the courts not rely on defense counsel to so advise their clients.

Accordingly, the trial court did not abuse its discretion in denying Houle post-conviction relief from his guilty plea.

For the reasons herein stated, the order of the district court, denying Houle post-conviction relief, is affirmed.

VANDE WALLE, LEVINE and MESCHKE, JJ., and BACKES, District Judge, concur.

BACKES, District Judge, sitting with the Court, due to the resignation of the Honorable H.F. GIERKE III, as of November 20, 1991.

mation. Under North Dakota law this constitutes a Class A Double A felony. The maximum punishment permissible under this statute is life imprisonment. There is a minimum punishment which attaches to this crime should there be a conviction. The wording of the statute is that a person found guilty of a Class Double A felony shall be not eligible to have his sentence considered by the Parole Board for thirty years less sentence reduction earned for good conduct after his admission to the penitentiary.

"I do not have the exact formula before me for the amount of good time that you could earn, but I suspect it would be somewhere in the vicinity of fifteen to twenty years. I would gather there is, in fact, a minimum punishment to this crime, in my opinion, by virtue of this section. Any other sentencing within that realm is entirely within the discretion of the Judge who presides at your trial."

Finally, we find the following exchange when Houle offered his plea:

"THE COURT [Burleigh County District Court Judge Larry Hatch]: All right. Well, let the record reflect that we are in court to discuss a plea agreement that the Court was informed of yesterday late in the day, that the plea agreement had been reached, no details were discussed. Following the provisions of Rule 11, Subsection d of the North Dakota Rules of Criminal Procedure, the matter on plea agreements are to be presented in open court.

"Preliminary to that, it would appear then that the procedure that we would follow, would be that Mr. Houle would move to change his plea from not guilty to guilty.

"MR. PULKRABEK: That is correct, Your Honor.

"THE COURT: Mr. Houle, come forward.

"Now on the 9th day of April, 1980, a Criminal Information charging you with the crime of murder was presented in court here in Burleigh County, and at that time, at the time of your arraignment on said Information, you entered a plea of not guilty to said charge.

"Is it your desire here in open court today to change your plea to that charge?

"THE DEFENDANT: Not guilty.

"THE COURT: Well, it had been a not guilty plea.

"MR. PULKRABEK: Your Honor, it is our desire today to ask leave and permission of the court to withdraw that plea of not guilty and enter a plea of guilty.

"THE COURT: Is that correct?

"THE DEFENDANT: Yes, it is, I would like to change my plea.

"THE COURT: In other words, it is your desire then to withdraw your prior plea of not guilty and enter a plea of guilty to the charge of murder?

"THE DEFENDANT: Yes, that's correct.

"THE COURT: Now have you discussed this matter with your attorney?

"THE DEFENDANT: Yes, I have.

"THE COURT: Do you feel that you are fully advised in the matter, that you are doing this advisedly?

"THE DEFENDANT: Yes, I am.

"THE COURT: Are you satisfied with the representation that Mr. Pulkrabek has giving you to this point?

"THE DEFENDANT: Yes, I am.

"THE COURT: All right. Now in light of that, I would then feel mandatory that I would go back and advise you of your rights.

\* \* \* \* \* \*

"THE COURT: All right. Now then, again very rapidly, the mandatory punishment—there is no mandatory maximum or minimum under North Dakota law. Under current North Dakota law you could receive up to life imprisonment, and I believe the fine is ten thousand is maximum fine. Those are the maximum sentences that you could receive.

"Is there any questions that you have relative to the punishment?

"MR. SLETTEN: I think that's twenty thousand dollars, Your Honor.

"THE COURT: Twenty thousand probably for the Class A.

"THE DEFENDANT: No, Your Honor."