# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 80

State of North Dakota,

Plaintiff and Appellee

v.

Russell Frank Craig,

Defendant and Appellant

## No. 20190282

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Bruce A. Romanick, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Tessa M. Vaagen, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**Crothers, Justice.**

[¶1] Russell Frank Craig appeals from an order denying his motion to withdraw his guilty plea to the offense of murder. We affirm.

I

[¶2] On June 5, 2006, a criminal complaint was filed with the court charging Craig with murder in violation of N.D.C.C. § 12.1-16.01, a class AA felony. On January 17, 2007, Craig pled guilty under an open plea. On March 2, 2007, Craig was sentenced to life with the possibility of parole. Craig testified when he arrived at the Department of Corrections and Rehabilitation (DOCR) he received a case plan stating he was eligible for parole in 20 years based on his life expectancy of 67 years less his current age of 44. In 2007 Craig wrote a letter requesting reduction of his sentence. In the letter Craig wrote the district court "Currently on a life sentence [I] have to [s]erve 85 [percent] of 30 years. I would be able to see the p[a]role board in 26.5 years . . . ." The court treated the letter as a motion for reduction of sentence and denied the requested relief.

[¶3] On November 27, 2017, the Burleigh County clerk of district court sent Craig a letter regarding a statutory change requiring a calculation of life expectancy for life sentences with the possibility of parole. On August 17, 2018, Craig filed a motion to withdraw his guilty plea because he believed he was eligible for parole after 20 years as outlined on his DOCR case plan which calculated his remaining life expectancy at 23 years, and not 85 percent of his remaining life expectancy of 33.8 years under the State's calculation based on N.D. Sup.Ct. Admin. R. 51. The district court denied his motion without holding a hearing. Craig appealed to this Court and argued the district court was required to hold oral argument on his motion once he requested it. This Court reversed and remanded for a hearing on the motion. *State v. Craig*, 2019 ND 123, ¶ 1, 927 N.W.2d 99. A hearing took place on August 19, 2019, and the district court denied Craig's motion to withdraw his guilty plea.

[¶4] Craig argues his sentence was illegal, the district court violated the prohibition on ex post facto punishment, and the district court erred by denying Craig's motion to withdraw his plea.

## II

[¶5] Craig concedes he did not raise at the district court the issue of whether his sentence was illegal or whether the district court violated the prohibition against ex post facto laws. Although not argued to the district court, this Court may review the issues for obvious error. "An issue not raised in the trial court is generally not reviewable on appeal unless it constitutes 'obvious error' under N.D.R.Crim.P. 52(b)." *State v. Sah*, 2020 ND 38, ¶ 9, 938 N.W.2d. 912 (citing *State v. Hart*, 1997 ND 188, ¶ 22, 569 N.W.2d 451). "The burden to show an obvious error is on the appellant, and when it is not argued, it is difficult for an appellate court to conclude the burden is satisfied." *Id.* (citing *State v. Thomas*, 2020 ND 30, ¶ 14, 938 N.W.2d 897 (citations omitted)). On appeal, Craig does not argue obvious error and we decline to address the claims.

## III

[¶6] Craig argues the district court erred when it denied his motion to withdraw his guilty plea because he did not make a knowing, intelligent and voluntary waiver of his rights.

[¶7] The State argues Craig was informed he could receive a sentence from zero to life without parole. The State argued the fact Craig mistakenly thought he was eligible for parole after 20 years, when the law actually required him to serve 30 years prior to being eligible for parole, does not amount to a manifest injustice.

[¶8] The district court denied Craig's motion to withdraw his guilty plea. The district court found "there was no procedural error on the part of the sentencing court. Craig's argument he was confused at the change of plea is unconvincing. Craig was advised he would be required to serve at least thirty years before being eligible for parole." The Court explained that Craig was informed at his change of plea hearing that he could be sentenced to life without parole. Craig

indicated he understood. Craig also was in the courtroom at sentencing when the State informed Craig he would have to serve 30 years before being eligible for parole, and the letter Craig wrote in 2007 indicated he believed he must serve 85 percent of 30 years.

[¶9] Rule 11, N.D.R.Crim.P., regulates changes of pleas. "The provisions of N.D.R.Crim.P. 11 'are mandatory and substantial compliance is required to ensure a defendant knowingly and voluntarily enters a guilty plea.'" *State v. Peterson*, 2019 ND 140, ¶ 6, 927 N.W.2d 74 (citing *State v. Yost*, 2018 ND 157, ¶ 17, 914 N.W.2d 508). "N.D.R.Crim.P. 11 does not require the trial court's advice to follow a ritualistic, predetermined formality, but the court must substantially comply with the procedural requirements of the rule to ensure the defendant is entering a voluntary guilty plea." *Id*. (citing *Yost*, at ¶ 20).

[¶10] Rule 11(d), N.D.R.Crim.P., dictates when a guilty plea may be withdrawn. "Unless the defendant proves that withdrawal is necessary to correct a manifest injustice, the defendant may not withdraw a plea of guilty after the court has imposed sentence." N.D.R.Crim.P. 11(d)(2). "The decision whether a manifest injustice exists for withdrawal of a guilty plea lies within the trial court's discretion and will not be reversed on appeal except for an abuse of discretion." *State v. Garge*, 2012 ND 138, ¶ 8, 818 N.W.2d 718. An abuse of discretion under N.D.R.Crim.P. 11(d) occurs when the court's legal discretion is not exercised in the interests of justice. *Peterson*, 2019 ND 140, ¶ 20, 927 N.W.2d 74 (citing *Yost*, 2018 ND 157, ¶ 6, 914 N.W.2d 508). "A manifest injustice may result from procedural errors by the sentencing court." *Id*. at ¶ 21 (citing *Yost*, at ¶ 15). "However, this Court has been reluctant to order a guilty plea withdrawn without evidence that suggests the defendant did not understand the nature of any agreement or sentencing recommendation." *Id*.

[¶11] "There is a significant difference between an agreement to make a non-binding recommendation of sentence and a binding plea agreement under

N.D.R.Crim.P. 11[c]." *State v. Feist*, 2006 ND 21, ¶ 16, 708 N.W.2d 870.[1] "If the parties agree to a non-binding recommendation of sentence, the State fulfills its obligation when it makes the specified non-binding recommendation, and the trial court may impose a harsher sentence than the one recommended without allowing the defendant to withdraw the guilty plea." *Id.*

[¶12] The following exchange occurred at Craig's change of plea hearing:

> "THE COURT: . . . The Court was notified yesterday of a change. Mr. Schwarz contacted my office indicating Mr. Craig desired to change his plea.
> Is that the case, Mr. Schwarz?
> MR. SCHWARZ: It is.
> THE COURT: Okay. Mr. Craig, I want to make sure you understand your rights. If you change your plea here today, you give up those rights that were given to you at your first appearance and then at your arraignment. Those rights include the right to an attorney, which still continue with you even if you were to change your plea. Your right to remain silent. The right to have a jury trial of 12 persons. The right to force the State to prove beyond a reasonable doubt you committed the offense. The right to call witnesses. The right to cross-examine witnesses. Basically, those rights would go away and we would move on to sentencing.
> Do you understand that, sir?
> THE DEFENDANT: Yes, I do.
> THE COURT: Okay. And is there a recommendation of some sort on the table from the State to the Defense?
> MR. RIHA: Your Honor, the Defense is aware of our recommendation.
> THE COURT: That's what I want to make sure. You're aware of what the State's going to recommend as a recommendation, Mr. Craig?
> THE DEFENDANT: Yes, I do.
> THE COURT: And you understand I can sentence you, because it's a recommendation it's not an agreement, anywhere from zero to the maximum penalty involved in this case which is life without parole.

---

[1] When *State v. Feist* was decided the numeration of the rule was N.D.R.Crim.P. 11(d).

Do you understand that, sir?

THE DEFENDANT: Yes, I do.

. . . .

THE COURT: Other than knowing what the State's going to recommend as a sentence, has anybody promised you anything or threatened you with anything to get you to plead guilty here today, sir?

THE DEFENDANT: No."

[¶13] Here, Craig has not provided evidence that he did not understand the nature of the sentencing recommendation. Craig entered his guilty plea based on a non-binding recommendation from the State that they would suggest a sentence of life with parole. The State made that recommendation at the sentencing hearing and fulfilled its obligation. At the change of plea hearing Craig entered his open plea of guilty knowing the district court was not obligated to accept the State's recommendation, and he could be sentenced anywhere from zero to life without parole. Craig received a lesser sentence than the maximum penalty. Therefore, he cannot claim his plea was not knowingly made.

[¶14] Further, the sentencing requirements under N.D.C.C. § 12.1-32-09.1 both now and when Craig was charged are clear. When Craig was charged Section 12.1-32-09.1, N.D.C.C., stated in pertinent part:

"Any offender who is convicted of a crime in violation of section 12.1-16-01, 12.1-16-02, 12.1-17-02, 12.1-18-01, subdivision a of subsection 1 or subdivision b of subsection 2 of section 12.1-20-03, section 12.1-22-01, subdivision b of subsection 2 of section 12.1-22-02, or an attempt to commit the offenses, and who receives a sentence of imprisonment is not eligible for release from confinement on any basis until eighty-five percent of the sentence imposed by the court has been served or the sentence is commuted. In the case of an offender who is sentenced to a term of life imprisonment with opportunity for parole under subsection 1 of section 12.1-32-01, the term 'sentence imposed' means the remaining life expectancy of the offender on the date of sentencing. The remaining life expectancy of the offender must be calculated on the date of sentencing, computed by reference to a recognized mortality table as established by rule by the supreme court.

5

Notwithstanding this section, an offender sentenced under subsection 1 of section 12.1-32-01 may not be eligible for parole until the requirements of that subsection have been met."[2]

Section 12.1-32-01, N.D.C.C., stated:[3]

"1. Class AA felony, for which a maximum penalty of life imprisonment without parole may be imposed. The court must designate whether the life imprisonment sentence imposed is with or without an opportunity for parole. Notwithstanding the provisions of section 12-59-05, a person found guilty of a class AA felony and who receives a sentence of life imprisonment with parole, shall not be eligible to have that person's sentence considered by the parole board for thirty years, less sentence reduction earned for good conduct, after that person's admission to the penitentiary."

[¶15] Craig was convicted of a crime in violation of N.D.C.C § 12.1-16-01. Section 12.1-16-01, N.D.C.C., includes one of the convictions listed in N.D.C.C. § 12.1-32-09.1. Therefore, Craig is not eligible for release from confinement on any basis until 85 percent of his sentence has been served. Section 12.1-32-09.1, N.D.C.C., defines the term "sentence imposed" as "the remaining life expectancy of the offender on the date of sentencing." The statute directs determination of the life expectancy by reference to a recognized mortality table as established by rule by the North Dakota Supreme Court. *Id.* Regardless of the calculated life expectancy, "an offender sentenced under subsection 1 of section 12.1-32-01 may not be eligible for parole until the requirements of that subsection have been met." N.D.C.C. § 12.1-32-09.1.

[¶16] Craig was sentenced under N.D.C.C. § 12.1-32-01 because he pled guilty to a class AA felony, for which a maximum penalty of life imprisonment without parole may be imposed. Section 12.1-32-01, N.D.C.C., requires that any person found guilty of a class AA felony and who receives a sentence of life imprisonment with parole must serve 30 years, *less sentence reduction earned*

[2] 1997 N.D. Sess. Laws ch. 135, § 1.
[3] 1997 N.D. Sess. Laws ch. 132, § 1.

*for good conduct.* (Emphasis added.) Regardless of which life expectancy calculation is used, 85 percent of Craig's life expectancy calculation is lower than 30 years. Therefore, Craig is required to serve 30 years less sentence reduction earned for good conduct before he is eligible for parole.

[¶17] Before changing his plea, Craig was informed by the court that he was required to serve 30 years, less sentence reduction earned for good conduct. The following exchange occurred at the preliminary hearing:

> "THE COURT: Before I can accept the waiver of the preliminary hearing, Mr. Craig, I need to ask you a few questions. Do you understand that the charge against you of murder carries a maximum penalty of life imprisonment without parole? If you are found guilty and the Court sentences you to life imprisonment with parole, there would be a minimum of 30 years before you will be eligible to have your sentence considered by the parole board less any reduction in the time of sentence for good conduct.
> . . . .
> Do you understand the charge against you?
> THE DEFENDANT: Yes."

The court later explained:

> "If the Court determines that this sentence should be imposed with parole, you would not be eligible to have your sentence considered by the parole board for 30 years less sentence reduction earned for good conduct after your admission to the penitentiary."

The court then asked, "Do you understand the nature of the charge against you and the maximum and minimum penalties that can be imposed?" Craig responded, "Yes."

[¶18] Ideally, the district court judge would have informed Craig again at the change of plea hearing of the 30 year mandatory minimum required under N.D.C.C. § 12.1-32-01. However, that is not required. *See Houle v. State*, 482 N.W.2d 24, 29-30 (N.D. 1992) (This Court concluded N.D.C.C. § 12.1-32-01(1) did not establish a mandatory minimum punishment, but, instead, established a period of parole ineligibility, and the sentencing court's failure to advise the

7

defendant of a parole eligibility provision did not affect the voluntariness of the defendant's plea.).

[¶19] The evidence establishes Craig understood his plea deal, including that he must serve a minimum of 30 years less reduction for good conduct. Therefore, the district court did not abuse its discretion in finding a manifest injustice did not exist.

IV

[¶20] We affirm the district court's order denying Craig's motion to withdraw his guilty plea.

[¶21] Daniel J. Crothers
    Gerald W. VandeWalle
    Jerod E. Tufte
    Lisa Fair McEvers
    Jon J. Jensen, C.J.