Alvin R. DeCOTEAU, Petitioner and Appellant,

v.

STATE of North Dakota, Respondent and Appellee.

Civ. Nos. 920280, 920316.

Supreme Court of North Dakota.

Aug. 10, 1993.

---

Alvin R. DeCoteau, pro se.

Paul A. Temanson (argued), Minot, for petitioner and appellant.

Timothy C. Wilhelm (argued), Asst. State's Atty., Minot, for respondent and appellee.

MESCHKE, Justice.

Alvin DeCoteau appeals the summary denial of post-conviction relief from consecutive maximum sentences of five years each on his plea agreement of guilty to two reduced felony charges. We affirm.

For December 1988 acts in Minot, the State charged DeCoteau with criminal mischief (a class A misdemeanor), theft of property (a class C felony), and robbery (a class B felony). At his February 1989 arraignment, the trial court informed DeCoteau and his attorney that convictions on "these offenses can be treated separately," so that he could be sentenced "for each individual one, consecutively, one at a time, so when one is finished the other one starts; or concurrently, so they are all lumped together." DeCoteau pled not guilty. On March 22, the prosecutor gave notice of his intent to seek to classify DeCoteau as a special dangerous offender for sentencing, if convicted. If convicted on all three charges, DeCoteau faced a potential sentence of sixteen consecutive years. *See* NDCC 12.1–32–01(3), (4), and (5). If found to be a special dangerous offender under NDCC 12.1–32–09, DeCoteau potentially faced twenty more years, for a total sentence of thirty-six consecutive years.

The prosecutor, DeCoteau, and his attorney negotiated a plea agreement. A court reporter was present at the April 5, 1989 negotiations, and prepared a 20–page transcript. DeCoteau's attorney explained a possible reduction of the charges in exchange for DeCoteau's guilty plea:

[O]n March 30, 1989, I received a letter—a short time after that date ... in which

discussion was made as to a possible recommendation of the Ward County State's Attorney's Office conditioned upon a plea of guilty to the offense of Aggravated Assault and Larceny of a Vehicle, in which the State of North Dakota would make a recommendation to the Court of five years on each particular charge to be *served consecutively.*

This would lock the Court in upon dismissal of the Robbery charge and the special dangerous offender to *a maximum sentence,* irrespective of the Court adopting the State's Attorney's recommendations, to a total *of ten years in prison....*

Further extending that, the Court could give a sentence of anywhere from one year in prison, *all the way up to ten years* in the North Dakota State Prison. The Court could also adopt a finding or a sentence that the term would be served concurrently. In other words, both sentences would be served at the same time which would limit the Court's, the imprisonment to 5 years.

(emphases added). During discussion, the prosecutor said to DeCoteau:

Upon acceptance of the plea by the Court, the State will recommend five years on each of the "C" felonies plead to, and that we would recommend that these sentences run *concurrently.*

(emphasis added). Completing his statement, however, the prosecutor added:

And at that point the Court, it is my understanding, would have to accept the plea and then can sentence from anywhere from the minimum to *the maximum of five years on each charge.*

(emphasis added). Later, DeCoteau inquired:

Another question I have for you is, ... you were saying something about that the Court can run the sentence concurrent after we go through this hearing Wednesday. And you also said *he could get me ten years, like, mandatory ten years, is that what you were telling me?*

[DEFENSE COUNSEL]: Under the recommendation, the Court can adopt the recommendation of the State's Attorney, insofar as sentence is concerned. In other words, the Court could sentence you to ten years in the State Penitentiary; *five years on each charge to be served consecutively,....*

[DECOTEAU]: *Okay.*

[DEFENSE COUNSEL]: The Court could give you less than ten years.... The Court could turn around and give you three to *five years on both,* on both charges, *and run them consecutive,* but irrespective, the Court would be locked in and at *the very maximum it could sentence you to ten years....*

[DECOTEAU]: *Okay.*

(emphases added). After discussion, DeCoteau stated his understanding:

For my understanding, we are going to go to Court. This is what I got. We are going to go to Court and they are going to present this evidence to us, or this evidence the State's got, right? And to determine from there, the Judge is going to take it in his hands and feel what his recommendation is right there or he's going to send me to jail, whatever he feels?

[DEFENSE COUNSEL]: *Up to ten years.*

[DECOTEAU]: *Up to ten years.*

(emphases added). This context clearly shows that DeCoteau agreed to plead guilty in exchange for reduced charges that had the effect of "capping" his maximum sentence at ten consecutive years, without any specific agreement by the prosecution to recommend a particular sentence.

A week later, DeCoteau appeared before the trial court, changed his plea, and was sentenced. The prosecutor reduced the charges to two class C felonies of theft of a vehicle and aggravated assault, dismissed the misdemeanor and the B felony of robbery, and withdrew the special-dangerous-offender notice. The effect reduced the potential maximum consecutive sentence from thirty-six years to ten years. For sentencing, the prosecutor recommended "five years on each of the counts plead to

and ... that those sentences be run consecutively." The trial court asked DeCoteau whether he understood the prosecutor's recommendation. DeCoteau declared that he did. DeCoteau then pled guilty to each of the two reduced charges.

The factual bases for the charges were developed on the record through two witnesses. The victim, a virtual stranger to DeCoteau, testified that he grabbed her when she reached her car while leaving a Minot nightspot alone, beat her, and choked her. DeCoteau's vicious attack left her with a broken jaw and a broken cheekbone; her skull "was broke in three places, and on the one side my bone was caved all the way in;" and she had "six fractured teeth that are shattered." The victim was senseless for a day. Because the victim "was so swollen from all the bruises," extensive corrective surgery was postponed for three days. Months later, the victim still suffered from the injuries.

Detective Debbie Ness testified about identifying DeCoteau as the victim's assailant, and about recovery of someone else's car that DeCoteau stole soon after the assault. When arrested, DeCoteau was driving the stolen car with "blood on his clothing, on himself, inside the car." An item from the victim's purse, with her name on it, was found on DeCoteau at his arrest. Other identifiable items from the victim's purse, without her name on them, were also recovered from DeCoteau. The court accepted the prosecutor's recommendation and sentenced DeCoteau to two consecutive five-year terms of imprisonment.

Without an attorney, DeCoteau sought a writ of habeas corpus in September 1989, arguing that the plea agreement required the five-year terms to be concurrent. The trial court denied the writ. Again on his own, DeCoteau applied for post-conviction relief in December 1989. Arguing that there was no genuine issue of material fact, the State moved for summary disposition. The trial court summarily denied DeCoteau's application.

DeCoteau appealed, with the assistance of counsel, arguing that he was not informed of his right to apply for court-appointed counsel in seeking post-conviction relief. In *State v. DeCoteau*, 464 N.W.2d 605, 606–07 (N.D.1990), we held that, under NDCC 29–32.1–03(6), "failure of the clerk to notify DeCoteau that assistance of counsel may be available and to inform him of the procedure for obtaining counsel affected DeCoteau's statutory right to such information and constitutes reversible error."

On remand, the trial court appointed counsel to assist DeCoteau. His counsel first obtained an order that gave DeCoteau credit for 109 days that he spent in custody before sentencing. *See* NDCC 12.1–32–02(2). Then, arguing breach of the plea agreement, ineffective assistance of counsel, and denial of due process, and relying entirely on the transcripts of the April 5 plea negotiations and the April 12 change of plea and sentencing, DeCoteau renewed his application for post-conviction relief to "enforc[e] the plea agreement" or to conduct a resentencing "where arguments could be made ... for a concurrent sentencing."

In a response on March 11, 1992, the prosecutor moved for summary judgment. On May 28, 1992, without tendering any additional evidence, DeCoteau's counsel advised the trial court "that this matter has been submitted to the Court for its decision."

In September 1992, after examining the transcripts, the trial court reasoned:

> By any reasonable objective standard, the record quite clearly indicates that DeCoteau knew that, upon entering pleas of guilty to the [reduced] charges against him, [the sentencing judge] could order him imprisoned for ten years. That is exactly what happened.

The trial court summarily denied the application.

DeCoteau appealed on his own initiative, and new counsel was appointed to assist him. Because the notice of appeal was untimely filed, we remanded to the trial court to determine whether there was excusable neglect that extended the time for appeal. *DeCoteau v. State*, 499 N.W.2d

894 (N.D.1993). The trial court extended the time, and we now have jurisdiction on appeal.

■■■ We review an appeal from a summary denial of post-conviction relief like we review an appeal from a summary judgment. *State v. Wilson,* 466 N.W.2d 101, 103 (N.D.1991). The Uniform Post–Conviction Procedure Act authorizes summary disposition only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." NDCC 29–32.1–09(1). This summary-judgment standard requires that all reasonable inferences favor the defendant at all preliminary stages of a post-conviction proceeding. *Id.* at 105. If a reasonable inference raises a genuine issue of material fact, the defendant is entitled to an evidentiary hearing. NDCC 29–32.1–09(2); *State v. Skjonsby,* 338 N.W.2d 628 (N.D.1983). The question here is whether, on the transcripts and record, the State was entitled to judgment denying DeCoteau post-conviction relief as a matter of law.

■■■ The State questions DeCoteau's right to use the Uniform Post–Conviction Procedure Act when he did not appeal from his sentence, citing subsection 2 of NDCC 29–32.1–01: "A proceeding under [the Act] is not a substitute for and does not affect any remedy incident to the prosecution in the trial court or direct review of the judgment of conviction or sentence in an appellate court." The State cites *State v. Willey,* 381 N.W.2d 183 (N.D.1986), holding that

> failure to take a direct appeal bars relief in a post-conviction action under Chapter 29–32, N.D.C.C., on the ground of abuse of process as to factual and legal contentions that the post-conviction applicant raised and litigated at the time of the

original trial court proceedings and which he deliberately or inexcusably failed to pursue on direct appeal.

*Id.* at 186. In response, DeCoteau cites subsection 1 of NDCC 29–32.1–01, allowing post-conviction relief for an illegal sentence.

NDRCrimP 35(a) says that "[t]he sentencing court may correct an illegal sentence at any time...." *See also Kaiser v. State,* 417 N.W.2d 175, 179 (N.D.1987); *State v. Vogel,* 325 N.W.2d 184 (N.D.1982) (approving NDRCrimP 32(d) motion to withdraw guilty plea under post-conviction procedure act when it "is necessary to correct a manifest injustice"). In *State v. Nace,* 371 N.W.2d 129, 131 (N.D.1985), citing NDRCrimP 35(a), we held that a post-conviction proceeding "is also available to collaterally attack a sentence where it 'exceeds the maximum authorized by law.' Thus, these post-conviction remedies co-exist for similar purposes as to illegal sentences." (footnote omitted). While the *Nace* holding about a combined sentence of imprisonment and probation has been superseded by legislation, *see* NDCC 12.1–32–06.1, its holding about challenging an illegal sentence by post-conviction proceedings is still sound. If DeCoteau's sentence did not comply with a promise of the plea bargain, it would be illegal, and DeCoteau would be entitled to post-conviction relief.

■■■ Our rules of criminal procedure authorize "a plea agreement procedure designed to give recognition to the propriety of plea discussions between counsel, to bring the existence of plea agreement out in open court, and to provide methods for court acceptance or rejection of the plea agreement." NDRCrimP 11 Explanatory Note.[1] The United States Supreme Court has held:

---

1. The relevant parts of NDRCrimP 11 say:
   (d) *Plea agreement procedure.*
   (1) *In general.* The prosecuting attorney, the attorney for the defendant, or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty to a charged offense or to a lesser or related offense, the prosecuting attorney will move for

dismissal of other charges, or will recommend or not oppose the imposition of a particular sentence, or will do both. The court shall not participate in any such discussion.
(2) *Notice of such agreement.* If a plea agreement has been reached by the parties, the court, on the record, shall require the disclosure of the agreement in open court or on a showing of good cause, in camera, at the time

This [plea agreement] phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that *when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.*

. . . .

[I]nterests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding ... to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether ... the circumstances require granting the relief sought by petitioner, *i.e.*, the opportunity to withdraw his plea of guilty.

*Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (emphasis added) (footnote omitted). *See also United States v. Van Horn,* 976 F.2d 1180, 1183 (8th Cir.1992) ("Since the government breached its promise not to recommend an upward departure [from certain sentencing guidelines], we must remand for resentencing.").

"Whether the [prosecution] violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." *United States v. Boatner,* 966 F.2d 1575, 1578 (11th Cir. 1992). *See also United States v. Lovaglia,* 954 F.2d 811, 817 (2nd Cir.1992) (to decide whether plea agreement was breached, court looks to what parties reasonably understood). *See generally,* Wayne R. La-Fave and Jerold H. Israel, *Criminal Procedure,* § 20.2(f) at 607 (*"The Unrealized Expectation"*) (1984) (Prevailing view is "that the defendant must ... show that his belief was a reasonable one under the circumstances"). The trial court correctly identified the controlling question in its decision: "[W]hether the sentence imposed by

the plea is offered. There upon the court may accept or reject the agreement, or may defer its decision as to acceptance or rejection until receipt of a presentence report.

(3) *Acceptance of plea.* If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement or another disposition more favorable to the defendant than that provided for in the plea agreement.

(4) *Rejection of a plea agreement.* If the court rejects the plea agreement, the court, on the record, shall inform the parties of this fact, advise the defendant personally in open court or on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

(5) *Time of plea agreement procedure.* Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court.

(6) *Plea discussions.* If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, any statement made in connection with and relevant to the plea discussion or any resulting agreement, plea, or judgment is not admissible in any criminal or civil action or administrative proceeding against the person who made the plea or offer. This rule does not apply to the introduction of voluntary and reliable statements made in court on the record in connection with any of the foregoing pleas or offers where offered for impeachment purposes or in a subsequent prosecution of the declarant for perjury or false statement, but only if in any case the statement was made under oath, on the record, and in the presence of counsel.

(e) *Determining accuracy of plea.* Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment of dispositional order upon such plea without making such inquiry as shall satisfy i[t] that there is a factual basis for the plea.

(f) *Record of proceedings.* A verbatim record of the proceedings at which the defendant enters a plea shall be made and, if there is a plea of guilty, the record shall include, without limitation, the court's advice to the defendant, the inquiry into the voluntariness of the plea including any plea agreement, and the inquiry into the accuracy of a guilty plea.

[the sentencing judge] comports with the reasonable understanding and expectations of DeCoteau as to the sentence for which he had bargained."

DeCoteau complains that because he received consecutive, rather than concurrent five-year sentences, he was deprived of the "benefit of the bargain." The record, as a whole, contradicts DeCoteau's present recollection of the bargain. DeCoteau agreed to plead guilty to two reduced class C felonies. The State agreed to dismiss the greater class B felony of robbery and the criminal mischief misdemeanor, and to withdraw the special-dangerous-offender notice. "[T]here are three possible concessions that may be made in a plea agreement: first, the charge may be reduced to a lesser or related offense; second, the attorney for the prosecution may agree not to recommend or not oppose the imposition of a particular sentence; or third, the attorney for the prosecution may promise to move for a dismissal of other charges." NDRCrimP 11 Explanatory Note.[2] DeCoteau's bargain with the prosecution did not include a binding recommendation on the sentence to be given for the reduced charges. The deal limited the maximum sentence to ten consecutive years instead of a potential thirty-six consecutive years. DeCoteau received the benefit of that bargain.

DeCoteau relies upon an isolated misstatement by the prosecutor during negotiations that "we would recommend that these sentences run concurrently," despite a context that makes clear that that was not intended or understood by anyone present. DeCoteau's position is not a reasonable understanding. DeCoteau was not promised anything less than ten consecutive years of imprisonment.

Given no more than an open recommendation for sentencing on the reduced charges, DeCoteau's present claim seeking concurrent sentences is unavailing. *State v. Werre*, 453 N.W.2d 826 (N.D.1990); *State v. Thompson*, 504 N.W.2d 315 (N.D. 1993). Absent a specific promise that the prosecution was bound to concurrent sentences, DeCoteau has no such bargain to enforce.

■ DeCoteau says that the hearing was allowed "to go forward despite the defen-

**2.** Much like NDRCrimP 11(d)(1), the federal criminal rule outlines three kinds of plea bargains:

> *In General.* The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:
> (A) move for dismissal of other charges; or
> (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or
> (C) agree that a specific sentence is the appropriate disposition of the case.
> The court shall not participate in any such discussions.

FRCrimP 11(e)(1). The Note to Subdivision (e)(2) in the Notes of Advisory Committee on Rules, 1979 Amendment to FRCrimP 11, explains related situations:

> Sometimes a plea agreement will be partially but not entirely of the (B) type, as where a defendant, charged with counts 1, 2 and 3, enters into an agreement with the attorney for the government wherein it is agreed that if defendant pleads guilty to count 1, the prosecutor will recommend a certain sentence as to that count and will move for dismissal of counts 2 and 3. In such a case, the court must take particular care to ensure that the defendant understands which components of the agreement involve only a (B) type recommendation and which do not. In the above illustration, that part of the agreement which contemplates the dismissal of counts 2 and 3 is an (A) type agreement, and thus under rule 11(e) the court must either accept the agreement to dismiss these counts or else reject it and allow the defendant to withdraw his plea. If rejected, the defendant must be allowed to withdraw the plea on count 1 even if the type (B) promise to recommend a certain sentence on that count is kept, for a multi-faceted plea agreement is nonetheless a single agreement. On the other hand, if counts 2 and 3 are dismissed and the sentence recommendation is made, then the defendant is not entitled to withdraw his plea even if the sentence recommendation is not accepted by the court, for the defendant received all he was entitled to under the various components of the plea agreement.

Federal Criminal Code and Rules 49 (West 1993).

dant's obvious confusion and distress, thus denying the defendant his due process rights of a fair hearing in a fair tribunal." We disagree. Despite some initial equivocation by DeCoteau, the trial court carefully asked DeCoteau whether he understood the prosecutor's recommendation, and DeCoteau answered affirmatively. Without a bargain for concurrent sentences, DeCoteau's subjective hope about the outcome could not be reasonable detrimental reliance.

■ Arguing ineffective assistance of counsel, DeCoteau says that his guilty pleas were "involuntary" and "cannot be maintained." In particular, DeCoteau argues that his "trial counsel failed to object to or correct the comments of the [prosecutor] about the confusion over the concurrent and consecutive sentencing issue." But DeCoteau's confusion was not a reasonable understanding of the bargain.

DeCoteau complains that "it appears that defense counsel made no argument at all on behalf of the defendant concerning [concurrent] sentencing." While DeCoteau alleged ineffective assistance in his application for post-conviction relief, he advanced no evidence by affidavit or otherwise to contradict the record of the plea negotiations and of the changed plea and sentencing. His defense counsel vigorously cross-examined the two witnesses who testified about the factual bases for the reduced charges. DeCoteau fails to realize that, after accomplishing a greatly reduced maximum sentence for his vicious conduct, there was little else that defense counsel could say to seek to diminish DeCoteau's sentence. In a case like this, no inference of deficiency in counsel's assistance can be drawn from a failure to address a remote possibility. There was no reason for the trial court to hold an evidentiary hearing on mere allegations in the face of DeCoteau's dismal conduct and this clear record.

The trial court did not err in denying DeCoteau's application for post-conviction relief from his sentence as a matter of law. We affirm.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.