2006 ND 21

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Douglas FEIST, Defendant and Appellant.**

**No. 20050152.**

Supreme Court of North Dakota.

Jan. 31, 2006.

Sarah J. Gerhardt (argued), appearing under the Rule on the Limited Practice of Law by Law Students, and Lloyd C. Suhr

(appeared), Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Justin J. Vinje (argued), appearing under the Rule on the Limited Practice of Law by Law Students, and Ralph A. Vinje (appeared), Vinje Law Firm, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Douglas Feist appeals from a criminal judgment entered on a plea of guilty to possession of a pipe bomb in violation of N.D.C.C. § 62.1–05–01. Because the district court, in accepting Feist's guilty plea, failed to substantially comply with the requirements of N.D.R.Crim.P. 11(c) and because the record demonstrates confusion over what sort of plea agreement or sentencing recommendation existed, we reverse the judgment and remand to the district court to permit Feist to withdraw his guilty plea.

## I.

[¶ 2] Feist and his friend, Andrew Greff, decided to make a bomb. In the early morning hours of July 10, 2004, Feist and Greff went down to the desert area of Kimball Bottoms south of Bismarck to detonate the bomb. Greff tried to light the bomb but the fuse kept going out. The fuse became dangerously low. Feist told Greff to throw the bomb in the river and forget about the whole thing. Greff wanted to pour gas on the bomb to get it to light. Feist became frightened that someone would get hurt, so Greff agreed to take Feist back to his house. But Greff decided to go back to the area and light the bomb.

[¶ 3] Soon after the explosion, Greff rushed to the hospital emergency room, screaming in pain, his left arm dismembered from his body near the mid bicep. According to a police report, his arm was "just a big pool of blood with some tendons running between the hand and the shoulder." His arm was ultimately amputated.

[¶ 4] Feist was arrested when his name was found on some of the receipts for the bomb's components. Feist told authorities he had a minimal role in making the bomb, and denied having any part in its detonation. He stated he did not think Greff would actually try to blow up the bomb after Greff took Feist home. Shortly after the incident, Feist was charged with possession of a bomb or explosive device, a class C felony.

[¶ 5] On August 18, 2004, the day set for the preliminary hearing, Feist pled guilty to the charge of possession of a bomb or explosive device.

THE COURT: Ok. Then as to the charge against you, um, how do you plead?

MR. FEIST: Ah, guilty Your Honor.

THE COURT: Other than discussions that may have occurred between your attorney and the State's Attorney, has anybody threatened you in any way or promised you anything to get you to plead guilty today?

MR. FEIST: No Your Honor.

[¶ 6] The court did not ask if a plea agreement existed, and no mention of a plea agreement was made on the record during this proceeding. The case was continued for sentencing and for a pre-sentence investigation.

[¶ 7] On March 22, 2005, at the first sentencing hearing in the bomb case, Feist contended that he had a plea agreement with state's attorney, Julie Lawyer. State's attorney Lloyd Suhr, who was substituting on her behalf, was not aware of any agreement.

MR. VINJE: I think it's actually a plea agreement Your Honor. Let me put it this way. If the Court's prepared

to accept the recommendation, we can go ahead. If the Court isn't, then I think I need to have the attorney here that agreed to a plea agreement. And the recommendation is going to be for six months, the same as the co-defendant received.

MR. SUHR: Ms. Lawyer, ah, was both set for trial, which was continued today, Your Honor, and then also had a daycare emergency, which is why I'm appearing on her behalf. My discussion with her this morning was that she would be recommending a sentence identical to that received by the co-defendant. This was not articulated to me as a plea agreement. If Mr. Vinje wants to continue this because that was his understanding, I don't have an objection. I'm just informing the Court the information I have when I became involved late this morning.

THE COURT: I have no note in my file that indicates that there was a plea agreement reached, that it would be a binding plea agreement.

The case was continued so that state's attorney Lawyer could clear up the ambiguity on what agreement existed in the bomb case.

[¶ 8] In an unrelated offense, Feist was also charged with reckless endangerment for the possession of venomous snakes. The snakes consisted of a seven-inch long hot pink albino monocle cobra, a three-inch long Australian death adder, and a four-foot long East African green mamba. The snakes are among the world's deadliest.

[¶ 9] On March 30, 2005, following the continuance on sentencing in the bomb case, the court held a combined change of plea hearing on the snake case, and a sentencing hearing on the bomb case. In the snake case, Feist pled guilty to a class A misdemeanor of reckless endangerment. The court then discussed the sentencing in the bomb case and inquired into the existence of a plea agreement.

THE COURT: Mr. Vinje you had indicated when we had a hearing a week ago that you were under the impression there was a plea agreement. We listened to the tape of the preliminary hearing. There was no mention of a plea agreement at that preliminary hearing.

MR. VINJE: The preliminary hearing on the snake?

THE COURT: On the bomb, he waived his preliminary hearing and pled guilty and at that time there was no mention of a plea agreement at that time.

MR. VINJE: It was my understanding that it was a plea agreement and, of course—

MS. LAWYER: I had clarified we had entered into one later but it covered both of these cases since only one of the cases was before the Court last time because the plea agreement—since that is the case there would [be] a plea agreement that we would be presenting to the Court . . .

THE COURT: What's the substance of your plea agreement?

MR. VINJE: Well, Your Honor, the plea agreement is that he serve 6 months in the Burleigh County Jail. That is the same sentence his co-defendant on both charges got although his co-defendant pled guilty to a felony on the snake case where he has just pled guilty to a misdemeanor.

[¶ 10] Lawyer went on to state the agreement in both cases would be for two years with all but six months suspended. The court responded that it would "reject the plea agreement. I would accept it on the snake case but I will not accept it on the explosives case." Feist requested a

jury trial on both cases, which the court apparently granted.

MR. VINJE: I guess set it for a jury trial then.

THE COURT: All right. Do you want to go to trial in both of the cases or—

MR. VINJE: We may as we will try both of them as long as we are going to be trying them.

THE COURT: All right, how long do you believe you will need for trial, Miss Lawyer?

[¶ 11] On April 13, 2005, the court issued a written order explaining the circumstances surrounding the alleged plea agreement. The court's order noted that "the parties did not agree as to what plea agreement existed" but that later the "parties stated that there was an agreement between them." The court's written order ultimately denied the withdrawal of Feist's guilty plea although there was no formal motion to withdraw a guilty plea in the record pending before the court at that time.

[¶ 12] On May 2, 2005, the court held a sentencing hearing in the bomb case. Feist again requested a withdrawal of his guilty plea. This time, state's attorney Lawyer disagreed that there ever was a plea agreement.

MS. LAWYER: Your Honor, we dispute first of all this plea was entered into and is an open. There were no plea negotiations at that time. It was abundant at the first attempt to do sentencing when I was not present, but Mr. Suhr was. I had informed him that the plea was based on his—upon his plea of guilty to a separate charge and we would be making a—if there were a guilty plea in the other case, the plea agreement had no basis on the guilty plea in this matter.

That's why it was not a plea agreement at the time of the original sentencing in this case because that other matter was not up before the court again. This plea was entered into before any negotiations whatsoever took place between the State and the defense. This was not a coerced plea.

There is nothing in the record to indicate that Mr. Feist was unaware of his right at the time that he entered his guilty plea and there was no indication that the guilty plea was entered that it was being offered as a conditional type of plea in any way whatsoever, so I think with the Information that has been provided, the Court has already made its ruling on that and there is nothing new that has been brought to you so I would move that we go to sentence at this time.

THE COURT: Thank you. I am going to deny the motion and we will proceed to sentencing.

[¶ 13] After hearing testimony and recommended sentences, the court sentenced Feist to "five years at the State Penitentiary with all but two years suspended for a period of five years." Instead of receiving a two-year sentence with all but six months suspended as the co-defendant who detonated the bomb received, Feist received a five-year sentence with all but two years suspended.

[¶ 14] On appeal, Feist argues the court was required to allow him to withdraw his guilty plea under N.D.R.Crim.P. 11(d)(4), because a binding plea agreement existed. In the alternative, Feist argues under N.D.R.Crim.P. 32, the court abused its discretion in not allowing him to withdraw his plea of guilty, because not doing so resulted in a manifest injustice.

[¶ 15] The State argues there was no binding plea agreement; only a non-binding sentencing recommendation. Further,

if there had been a plea agreement in existence, the parties would have disclosed the agreement when Feist entered his plea of guilty seven months before sentencing.

## II.

[¶ 16] There is a significant difference between an agreement to make a non-binding recommendation of sentence and a binding plea agreement under N.D.R.Crim.P. 11(d). *State v. Thompson*, 504 N.W.2d 315, 319 (N.D.1993). If the parties agree to a non-binding recommendation of sentence, the State fulfills its obligation when it makes the specified non-binding recommendation, and the trial court may impose a harsher sentence than the one recommended without allowing the defendant to withdraw the guilty plea. *Id.* When presented with a binding plea agreement, the court is limited to three options: the court may accept the agreement, reject the agreement, or defer its decision until receipt of a presentence report. *See* N.D.R.Crim.P. 11(d)(2). If the court accepts a binding plea agreement, the court may not impose a sentence less favorable than the sentence provided for in the plea agreement. *See* N.D.R.Crim.P. 11(d)(3). If the court rejects a binding plea agreement, the court must inform the defendant it is not bound by the agreement, must allow the defendant to withdraw the plea, and must inform the defendant that if the defendant persists in pleading guilty, the court may impose a sentence less favorable than the one provided for in the plea agreement. *See* N.D.R.Crim.P. 11(d)(4); *Peltier v. State*, 2003 ND 27, ¶ 10, 657 N.W.2d 238.

[¶ 17] The precise nature and timing of the plea discussions in this case is unclear from the record. The State argues there was never a binding plea agreement. But Lawyer's statements at the first sentencing hearing suggests otherwise. During the sentencing hearing, she admitted she "had entered into one later but it covered both of these cases." The question becomes what her "one" was referring to. Because her response follows a discussion of a plea agreement, it would appear the "one" refers to a plea agreement. Furthermore, the district court judge suggests there was a plea agreement by stating "I reject the plea agreement ... on the explosives case." At the final sentence hearing on May 2, 2005, Lawyer denies there ever being a plea agreement.

[¶ 18] The discussion on March 30, 2005, where the term "plea agreement" was mentioned, indicates at least that plea negotiations had occurred. This Court has held, "[i]n cases where the nature of a plea agreement is ambiguous, a trial court should clarify the matter on the record." *Peltier v. State*, 2003 ND 27, ¶ 12 n. 1, 657 N.W.2d 238. Unfortunately, the court did not attempt to clarify the nature of the agreement on the record. Not every ambiguity in an agreement will be decided in favor of the defendant. In *State v. Sisson*, this Court held a district court was within its discretion in construing a defendant's "implied 'understanding' " as not being a condition of a plea agreement. 1997 ND 158, ¶ 6, 567 N.W.2d 839.

[¶ 19] A written plea agreement placed in the record would have eliminated the ambiguity of whether the defendant and state's attorney had reached an agreement. But "[n]ot all plea agreements are reduced to writing." *State v. Farrell*, 2000 ND 26, ¶ 16, 606 N.W.2d 524. If there was a plea agreement that was rejected, the district court violated N.D.R.Crim.P. 11(d)(4) in not allowing Feist to withdraw his guilty plea. Because we cannot conclusively determine there was an actual plea agreement in this case, we must decide if the withdrawal of the guilty plea was nec-

essary to prevent a manifest injustice under N.D.R.Crim.P. 32.

[¶ 20] The court must allow the defendant to withdraw a plea of guilty whenever the defendant, "on a timely motion for withdrawal, proves withdrawal is necessary to correct a manifest injustice." N.D.R.Crim.P. 32(d)(1). Alternatively, "[i]n the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw a plea of guilty as a matter of right once the plea has been accepted by the court." N.D.R.Crim.P. 32(d)(3). But before sentencing, "the court in its discretion may allow the defendant to withdraw a plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea." *Id.*

[¶ 21] This Court has previously recognized "[c]ourts and commentators have taken cognizance that Rule 32(d) should be liberally construed in favor of the defendant, and that leave to withdraw a guilty plea before sentencing should be freely granted." *State v. Millner,* 409 N.W.2d 642, 644 (N.D.1987) (citing *United States v. Punch,* 709 F.2d 889, 893 n. 5 (5th Cir. 1983); *United States v. Russell,* 686 F.2d 35, 38 (D.C.Cir.1982); *United States v. Navarro–Flores,* 628 F.2d 1178, 1183 (9th Cir.1980); 3 Charles Alan Wright, *Federal Practice & Procedure: Criminal 2d* § 538, at 199 (1982)). "Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury." *Millner,* 409 N.W.2d at 644 (quoting *Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir.1963)).

[¶ 22] The determination of a manifest injustice or the occurrence of a fair and just reason, are within the trial court's discretion, and will be reversed on appeal only for an abuse of discretion.

*State v. Sisson,* 1997 ND 158, ¶ 15, 567 N.W.2d 839. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law. *State v. Farrell,* 2000 ND 26, ¶ 8, 606 N.W.2d 524.

[¶ 23] This case is similar to *Farrell* because in both cases "some promise had been made." *Id.* at ¶ 18. In *Farrell,* we reversed and remanded because the defendant was confused on what his plea meant and because the district court did not comply with N.D.R.Crim.P. 11(c). *Farrell,* at ¶ 21. Following the entry of a guilty plea, Farrell immediately questioned the court on why he was being given a higher sentence than what he agreed to. *Id.* at ¶ 5. The district court stated "[b]ecause of your record. It was a recommendation. It wasn't a plea bargain." *Id.* Farrell responded with "[w]ell then I have a right to change my plea then also, don't I?" *Id.* The district court refused to allow Farrell to withdraw his guilty plea. *Id.*

[¶ 24] Furthermore, as in *Farrell,* the district court failed to substantially comply with N.D.R.Crim.P. 11(c). Before a district court accepts a guilty plea, it must advise the defendant of certain rights. *Farrell,* at ¶ 9. The advice required to be given by Rule 11 is mandatory and binding on the court. *Id.* Although Rule 11 does not require any predetermined formality, the court must substantially comply with the procedural requirements of the rule. *Id.* A district court is required to "inquire as to whether the defendant's willingness to plead guilty results from previous discussion between the prosecuting attorney and the defendant or the defendant's attorney." *See* N.D.R.Crim.P. 11(c). The purpose for the inquiry in N.D.R.Crim.P. 11(c) is for the district court to ascertain whether a guilty plea is the result of negotiations so the

court can inquire further about the negotiation process to assess the defendant's understanding of the terms of any resulting agreements. *Farrell,* at ¶ 15.

[¶ 25] In this case, the court failed to substantially comply with Rule 11(c). This resulted in confusion on the record demonstrating ambiguity about plea negotiations. Feist initially plead guilty. At the time of his plea, there is no discussion of an agreement during the hearing. But the court did not inquire whether discussions with the state's attorney had occurred as required by Rule 11(c). By the time the bomb case was associated with the snake case, the record demonstrates discussions had occurred but there is confusion about the nature of what was agreed to. The court did not attempt to clarify the confusion on the record. *See Peltier v. State,* 2003 ND 27, ¶ 12, n. 1, 657 N.W.2d 238. The confusion likely occurred because multiple assistant state's attorneys were involved in the two cases. The confusion was compounded when the court indicated it would reject the plea agreement and discussed setting both cases for trial, but then later denied Feist's motion to withdraw his guilty plea.

[¶ 26] The court did not ask whether the guilty plea was the result of plea negotiations. The court merely asked: "Other than discussions that may have occurred between your attorney and the State's Attorney, has anybody threatened you in any way or promised you anything to get you to plead guilty today?" No inquiry was ever made by the district court whether the guilty plea was the result of discussions *with* the state's attorney. The court's use of the phrase "other than" specifically excludes conversations with the state's attorney. Under these circumstances, the court did not substantially comply with N.D.R.Crim.P. 11(c).

[¶ 27] Because the record shows the court did not substantially comply with the requirements of N.D.R.Crim.P. 11(c) and there was ambiguity apparent on the record as to whether a plea agreement existed between the parties, we conclude the withdrawal of Feist's guilty plea is necessary to correct a manifest injustice. The court abused its discretion in not allowing Feist to withdraw his guilty plea.

III.

[¶ 28] We reverse the criminal judgment and remand the case to the district court to allow Feist to withdraw his guilty plea in the bomb case.

[¶ 29] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.