2008 ND 33

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Travis Charles LIUM, Defendant and Appellant.**

**No. 20070135.**

Supreme Court of North Dakota.

Feb. 21, 2008.

Rehearing Denied March 20, 2008.

Reid Alan Brady (argued), Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Alexander F. Reichert (argued), Grand Forks, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Travis Charles Lium appeals from a criminal judgment for aggravated assault and reckless endangerment entered after the district court denied his motion to withdraw his guilty pleas. We hold the district court abused its discretion in denying Lium's motion to withdraw his pleas without deciding whether he presented a fair and just reason for withdrawal, and we reverse and remand for reconsideration of his motion.

I

[¶ 2] In June 2006, the State charged Lium with attempted murder, a class A felony, alleging he stabbed his former girlfriend's boyfriend with a knife and struck him with a vehicle in an attempt to murder him. According to the State, Lium entered the apartment of his former girlfriend, who was also the mother of his two young sons, through an unlocked patio door, pushed her out of the way, charged the victim, grabbed a kitchen knife, and cut the victim at least two times in the back and shoulder area. The State claimed the victim then ran out of the apartment building to an adjacent driveway, and shortly thereafter, Lium accelerated his vehicle down the driveway and hit the victim with the vehicle.

[¶ 3] In a February 1, 2007, written plea agreement, Lium, with counsel and to avoid a jury trial on the attempted murder charge, agreed to enter a guilty plea under *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to two class C felonies: (1) aggravated assault for cutting the victim with the knife, and (2) reckless endangerment for hitting the victim with the vehicle. The written plea agreement said the prosecution would seek to have the sentence for both charges "imposed consecutively at the maximum term of incarceration for a total of 10 years,"

and Lium was "free to argue for a lesser sentence but for no less than 7½ years in custody."

[¶ 4] At a change-of-plea hearing, the district court accepted Lium's guilty pleas after a colloquy with him about his understanding of the plea agreement and his rights. During the exchange, Lium stated that he understood the plea agreement and the nature of the charges, the maximum penalties for each charge, and the minimum mandatory term of imprisonment for the aggravated assault charge; that he had an opportunity to review the plea agreement with his attorneys, his attorneys had explained the charges to him, and he understood the agreement and the elements of the charges; and that he knew he was surrendering various rights by entering the pleas, including the right to a preliminary hearing, the right to be present at all stages of the proceeding, the right to plead not guilty, the right to an attorney, the right to a speedy, public jury trial, the right to a presumption of innocence, the right to confront and subpoena witnesses, the right to bail, and the right to remain silent. The court explained to Lium that the State had reserved its right to argue for consecutive sentences for the two charges, which each carried a maximum term of imprisonment of five years, and that Lium's counsel agreed the defense would not argue for a sentence of less than 7½ years. Lium acknowledged that no promises or threats had been made to him in exchange for the pleas and the State had sufficient evidence to prove its case. The State provided the court with a factual basis for the charges, and the court accepted Lium's *Alford* pleas and ordered a presentence investigation. The court also informed Lium the presentence investigation would be part of the basis for the court's sentence, and if the court felt "the range that the parties have agreed to for

sentencing" was too light or too harsh, the court could reject the agreement and give him the opportunity to withdraw his pleas.

[¶ 5] Lium thereafter sent a handwritten letter, dated February 23, 2007, to the district court "to clear up any ambiguity ... as to what [he felt was] fair in regards to [his] sentencing." His letter stated the prosecutor was "not willing to be reasonable in regards to their sentencing recommendation or charges," and he sought a "minimal time of incarceration" that would be "much less than the five year maximum" and run concurrently. He also stated "the attorneys handling this case have been atrocious," he "had no intentions of killing or seriously injuring anyone," and he "was not confident in [his] attorneys' preparation for trial, since they never came to visit [him] on the specifics of [his] case." He informed the court he wanted to rescind his pleas if the court felt obligated to impose the sentences outlined in the plea agreement, and he wanted a new attorney appointed or he may want to represent himself. He closed the letter by stating he "would like an amicable end to this case, but sitting in prison for seven and a half years is not [an] amicable conclusion. I appreciate your fairness. You are my only chance for a just punishment in this case without the costs of a trial."

[¶ 6] Before sentencing, Lium retained different counsel and moved to withdraw his guilty pleas. In an affidavit in support of his motion, Lium stated:

3. That on multiple occasions, my original attorney appeared to want [to] quit his representation of me if I did not accept the terms of the plea agreement he had negotiated with the Cass County State's Attorney's office.

4. A few days before my change of plea, my attorney presented me with an oral agreement. I rejected that agreement and my attorney stormed out of the jail.

5. That I was confused and scared upon seeing his response and did not understand that I would have an opportunity to seek replacement counsel if my original counsel had in fact quit.

6. That I had not seen the plea agreement or consented to any of its terms up until one (1) hour prior to my Change of Plea hearing.

7. That approximately one (1) hour before my Change of Plea hearing I saw the plea agreement for the first time, again my attorney make [sic] me feel he would quit his representation of me if I did not accept the terms of the plea agreement.

8. That I remained confused and scared that I would be left to defend myself in the charges facing me if I did not comply with my attorney's wishes.

9. I have subsequently learned that I was not required to submit to the threats of my previous attorney and could have obtained substitute counsel.

10. But for the threats of my attorney to cease his representation of me, I would never have agreed to enter into a guilty plea in open court. I do not feel I am guilty of the charges I am accused of and only agreed to the plea agreement out of fear of having to represent myself based upon my previous attorney's threats.

[¶ 7] The district court denied Lium's motion, ruling withdrawal of the guilty pleas was not necessary to correct a manifest injustice and Lium's pleas were voluntary and intelligent:

Okay. Relying on the submissions then of the parties and Rule 32 of the North Dakota Rules of Criminal Procedure there is no manifest injustice that needs to be corrected here.

And in looking at the voluntary nature of the guilty plea given the Rule 11 and the Court's care in trial to follow those factors we have an attack on the voluntary and intelligent nature of the guilty plea and statements by the Defendant that he was somehow threatened or wasn't given competent advice by his former counsel.

But looking at the case as a whole this was an attempted murder case which was amended and I believe it's a double A—or excuse me, a single A Felony punishable by up to 20 years. And previous counsel secured, through negotiation with the State, an Amended Information to two Class C Felonies with a maximum of 5 years each on those.

It appears that the advice he got was certainly within the range of competent criminal defense attorney and that the Court questioned him on two occasions as to whether it was voluntary.

So in looking at Rule 32 I'm going to deny the motion to withdraw the plea of guilty in this case and we'll proceed to sentencing.

The court then sentenced Lium to consecutive five-year terms of incarceration for the two offenses.

## II

[¶ 8] Lium argues the district court's failure to give him a mandatory warning required by N.D.R.Crim.P. 11(c)(3)(B) constitutes obvious error that affected his substantial rights. He claims the court failed to advise him that he had no right to withdraw the pleas under N.D.R.Crim.P. 11(c)(3)(B) if the court did not follow the State's recommendation under N.D.R.Crim.P. 11(c)(1)(B). The State responds Lium failed to raise this issue in the district court, and even if the issue had been raised, the court properly advised Lium of his rights under N.D.R.Crim.P. 11, because the plea agreement was under N.D.R.Crim.P. 11(c)(1)(C) and not 11(c)(1)(B).

■ [¶ 9] To establish obvious error, a defendant must show (1) error, (2) that is plain, and (3) that affects substantial rights. *State v. Olander*, 1998 ND 50, ¶ 14, 575 N.W.2d 658. An alleged error does not constitute obvious error unless it is a clear deviation from an applicable legal rule under current law. *Id.*

[¶ 10] Rule 11(c), N.D.R.Crim.P., outlines a procedure for plea agreements, including binding and nonbinding agreements, and provides, in part:

*(c) Plea Agreement Procedure.*

(1) In General. The prosecuting attorney and the defendant's attorney, or the defendant when acting pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty to either a charged offense or a lesser or related offense, the plea agreement may specify that the prosecuting attorney will:

(A) not bring, or will move to dismiss, other charges;

(B) recommend, or agree not to oppose the defendant's request, that a particular sentence is appropriate; or

(C) agree that a specific sentence or sentencing range is the appropriate disposition of the case.

. . . .

(3) Judicial Consideration of a Plea Agreement.

(A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept

the agreement, reject it, or defer a decision until the court has reviewed the presentence report.

(B) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.

[¶ 11] Those provisions of our rule are similar to F.R.Crim.P. 11(c)(1) and (3). *See* N.D.R.Crim.P. 11, Explanatory Note. We have frequently said that when our procedural rule is similar to the corresponding federal rule, federal decisions may be persuasive in construing our rule. *E.g. State v. O'Rourke*, 544 N.W.2d 384, 385 (N.D.1996). In *United States v. Gillen*, 449 F.3d 898, 902 (8th Cir.2006), the Eighth Circuit Court of Appeals explained the main difference between a plea agreement under F.R.Crim.P. 11(c)(1)(B) and under 11(c)(1)(C) is that under (c)(1)(C), the government promises to "agree," which binds the district court at sentencing, and under (c)(1)(B) the government promises to "recommend," which does not bind the district court at sentencing. *See State v. Feist*, 2006 ND 21, ¶ 16, 708 N.W.2d 870 (discussing difference between binding and nonbinding plea agreement); *Bay v. State*, 2003 ND 183, ¶ 12, 672 N.W.2d 270 (same); *Peltier v. State*, 2003 ND 27, ¶¶ 9–12, 657 N.W.2d 238 (same); *DeCoteau v. State*, 504 N.W.2d 552, 558 n. 2 (N.D.1993) (same); *State v. Thompson*, 504 N.W.2d 315, 319 (N.D.1993) (same).

[¶ 12] In *DeCoteau*, 504 N.W.2d at 558 n. 2, we recognized that plea agreements in what is now N.D.R.Crim.P. 11(c)(1) may have elements of more than one kind of plea bargain. In *DeCoteau*, at 556–59, we also discussed a plea agreement in contractual terms involving the defendant's reasonable understanding and expectation as to the sentence for which he had bargained. *See State v. Hamann*, 262 N.W.2d 495, 502 (N.D.1978) ("an approved plea bargaining agreement has qualities similar to that of a contract"); *State v. Thorstad*, 261 N.W.2d 899, 902 (N.D.1978) (noting contract elements in plea bargaining and stating contract criteria have been superimposed upon plea bargaining). *See also United States v. Sanchez*, 508 F.3d 456, 460 (8th Cir.2007) ("Plea agreements are contractual in nature and should be interpreted according to general contract principles."); *United States v. Yah*, 500 F.3d 698, 703 (8th Cir.2007) (applying general contract principles in interpreting plea agreements); *United States v. Bernard*, 373 F.3d 339, 345 (3rd Cir.2004) (plea agreements are contractual and analyzed under contract law standards).

[¶ 13] Here, nothing in Lium's written plea agreement explicitly states the agreement is either binding on the district court under N.D.R.Crim.P. 11(c)(1)(C), or not binding on the district court under N.D.R.Crim.P. 11(c)(1)(B). *See Peltier*, 2003 ND 27, ¶ 12 n. 1, 657 N.W.2d 238 (agreement treated as binding plea agreement, but in cases where the nature of a plea agreement is ambiguous, a court should clarify the matter on the record). However, the plea agreement plainly states the criminal information would be amended from attempted murder, a class A felony, to two class C felonies to avoid a jury trial on the original charge of attempted murder, which carried a more substantial maximum prison term. The plea agreement specifically says, "[a]t sentencing the prosecution will seek to have the sentences on [the two counts] imposed consecutively at the maximum term of incarceration for a total of 10 years" and "the defense is free to argue for a lesser sentence but for no less than 7½ years in custody." The language of the plea agree-

ment, when read as a whole, does not include language saying the State agreed to a sentence that was a nonbinding recommendation under the "recommend, or agree not to oppose the defendant's request, that a particular sentence is appropriate" language of N.D.R.Crim.P. 11(c)(1)(B). Rather, the language of the agreement about sentencing, when read together, effectively says the State agreed to a specific sentence or sentencing range, which implicates the "specific sentence or sentencing range" language of N.D.R.Crim.P. 11(c)(1)(C), and also includes aspects of N.D.R.Crim.P. 11(c)(1)(A) for dismissal of the attempted murder charge. The court's statement to Lium about rejecting the agreement if, after reviewing the presentence investigation the court felt the agreement was too light or too harsh, is consistent with a binding plea agreement under N.D.R.Crim.P. 11(c)(1)(C) and N.D.R.Crim.P. 11(c)(3)(A). We conclude the plea agreement was a binding plea agreement under N.D.R.Crim.P. 11(c)(1)(C) and not a nonbinding recommendation under N.D.R.Crim.P. 11(c)(1)(B). We therefore conclude N.D.R.Crim.P. 11(c)(3)(B) is not applicable and the district court did not err in failing to provide Lium with the warning required by that subsection. We therefore reject Lium's obvious error claim under N.D.R.Crim.P. 11(c).

## III

[¶ 14] Lium argues the district court abused its discretion in denying his motion to withdraw his guilty pleas, because the court did not exercise its discretion in the interest of justice and the court misinterpreted and misapplied the law. Lium argues his assertion of innocence through his *Alford* pleas and his post-plea filings with the court, and the involuntary nature of his pleas are fair and just reasons for withdrawal of his pleas. He claims he was confused and he misunderstood the effect of his pleas on his ability to withdraw the pleas under N.D.R.Crim.P. 11(c)(3)(B), which demonstrates the pleas were not intelligent, knowing, and voluntary. He asserts other facts show he did not voluntarily enter pleas, including (1) he saw the plea agreement only one hour before he changed his plea, (2) his pleas resulted from his prior counsels' threats to cease representing him, and (3) his prior counsels' representation had been "atrocious." He contends the State did not cite any prejudice or inconvenience that would result if he was allowed to withdraw his guilty pleas. He asserts the district court ignored this Court's admonition to err on the side of the liberal allowance of plea withdrawals before sentencing. He argues the district court's denial of his motion to withdraw his pleas did not decide whether he had presented any fair and just reason warranting withdrawal of his pleas.

[¶ 15] The State responds the district court did not abuse its discretion in denying Lium's motion to withdraw his guilty pleas, because Lium failed to show it would be fair and just to allow withdrawal of his pleas and failed to prove withdrawal was necessary to correct a manifest injustice. The State argues Lium failed to show his assertion of innocence supported withdrawal of his pleas because his assertion of innocence to the amended charges, as opposed to the initial charge, is not entirely clear from his handwritten letter to the court. The State argues the district court properly found Lium's pleas were voluntary because there was no indication of threats by his attorneys when Lium entered the pleas and Lium expressed his desire to avoid potential greater punishment for an attempted murder conviction.

[¶ 16] The withdrawal of a guilty plea is governed by N.D.R.Crim.P. 32(d), which provides:

(1) In General. The court must allow the defendant to withdraw a plea of guilty whenever the defendant, on a timely motion for withdrawal, proves withdrawal is necessary to correct a manifest injustice.

(2) Timeliness. A motion for withdrawal is timely if made with due diligence, considering the nature of the allegations, and is not necessarily barred because made subsequent to judgment or sentence.

(3) Court's Discretion. If the defendant does not show that withdrawal is necessary to correct a manifest injustice, the defendant may not withdraw a plea of guilty as a matter of right once the court has accepted the plea. Before sentence, the court in its discretion may allow the defendant to withdraw a plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance on the defendant's plea.

[¶ 17] Under N.D.R.Crim.P. 32(d), the standard for a district court's consideration of a defendant's request to withdraw a guilty plea differs depending on when the motion to withdraw is made. *State v. Bates,* 2007 ND 15, ¶ 6, 726 N.W.2d 595; *Froistad v. State,* 2002 ND 52, ¶ 5, 641 N.W.2d 86. A defendant has a right to withdraw a guilty plea before it is accepted by the court. *Bates,* at ¶ 6; *Froistad,* at ¶ 6. " 'After a guilty plea is accepted, but before sentencing, the defendant may withdraw a guilty plea if necessary to correct a manifest injustice, or, if allowed in the court's discretion, for any "fair and just" reason unless the prosecution has been prejudiced by reliance on the plea.' " *Froistad,* at ¶ 8 (quoting *State v. Klein,* 1997 ND 25, ¶ 13, 560 N.W.2d 198). *See also Bates,* at ¶ 6; *Feist,* 2006 ND 21, ¶ 20, 708 N.W.2d 870. After a court has accepted a plea and imposed a sentence, a defendant cannot withdraw a plea unless the motion is timely and withdrawal is necessary to correct a manifest injustice. *Bates,* at ¶ 6; *Froistad,* at ¶ 9.

[¶ 18] In *Feist,* 2006 ND 21, ¶ 21, 708 N.W.2d 870, we recently reiterated:

"[c]ourts and commentators have taken cognizance that Rule 32(d) should be liberally construed in favor of the defendant, and that leave to withdraw a guilty plea before sentencing should be freely granted." *State v. Millner,* 409 N.W.2d 642, 644 (N.D.1987) (citing *United States v. Punch,* 709 F.2d 889, 893 n. 5 (5th Cir.1983); *United States v. Russell,* 686 F.2d 35, 38 (D.C.Cir.1982); *United States v. Navarro–Flores,* 628 F.2d 1178, 1183 (9th Cir.1980); 3 Charles Alan Wright, *Federal Practice & Procedure: Criminal 2d* § 538, at 199 (1982)). "Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury." *Millner,* 409 N.W.2d at 644 (quoting *Kadwell v. United States,* 315 F.2d 667, 670 (9th Cir.1963)).

[¶ 19] Although we have recognized a preference to liberally allow withdrawal of a guilty plea, where, as here, the motion to withdraw is before sentencing, we have also said N.D.R.Crim.P. 32(d) is not standardless and does not allow withdrawal as a matter of right after the plea has been accepted. *State v. Sisson,* 1997 ND 158, ¶ 17, 567 N.W.2d 839. A defendant has the burden of proving that a fair and just reason supports withdrawal of a plea, or that withdrawal is necessary to correct a manifest injustice. *State v. Dimmitt,* 2003 ND 111, ¶ 6, 665 N.W.2d 692; *State v. Millner,* 409 N.W.2d 642, 643 (N.D.1987).

[¶ 20] A district court's determination of a manifest injustice, or the occurrence of a fair and just reason is within the court's discretion and will not be reversed on appeal absent an abuse of discretion. *Feist*, 2006 ND 21, ¶ 22, 708 N.W.2d 870; *Sisson*, 1997 ND 158, ¶ 15, 567 N.W.2d 839. A district court abuses its discretion when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law. *Feist*, at ¶ 22; *State v. Farrell*, 2000 ND 26, ¶ 8, 606 N.W.2d 524.

[¶ 21] Here, the district court's oral decision denying Lium's motion states the court found that withdrawal of the guilty plea was not necessary to correct a manifest injustice and that Lium's pleas were voluntary and intelligent. To the extent the district court decided withdrawal of Lium's pleas was not necessary to correct a manifest injustice, we conclude the court's decision was not arbitrary, unreasonable, or capricious, or a misinterpretation of the law. We therefore conclude the court did not abuse its discretion in deciding withdrawal of Lium's pleas was not necessary to correct a manifest injustice.

[¶ 22] However, the district court did not decide whether there was a fair and just reason for withdrawal of Lium's pleas, and, if so, whether the State was prejudiced. A district court abuses its discretion when it misapplies the law. *Feist*, 2006 ND 21, ¶ 22, 708 N.W.2d 870. The "fair and just" reason for withdraw of a guilty plea involves a lesser showing than is required to establish "manifest injustice." American Bar Association Standards for Criminal Justice, *Pleas of Guilty* § 14–2.1(a), Commentary, p. 14–53 (1979). To the extent Lium's argument is based on the warning he claims he was entitled to under N.D.R.Crim.P. 11(c)(3)(B), we conclude his argument is meritless. However, Lium has raised other arguments about an assertion of innocence or a possible defense, which, although not sufficient to warrant a conclusion that the district court abused its discretion in deciding withdrawal was not necessary to correct a manifest injustice, may support a fair and just reason for withdrawal. Moreover, during oral argument to this Court, the State conceded it had not been prejudiced by reliance on the plea. *See Millner*, 409 N.W.2d at 644 (discussing substantial prejudice to State). We conclude the district court misapplied the law in failing to decide whether there was "any fair and just reason" to allow Lium to withdraw his pleas. We therefore reverse and remand for the district court to decide whether there was any fair and just reason to allow Lium to withdraw his pleas.

IV

[¶ 23] We reverse and remand for consideration of whether Lium should be allowed to withdraw his guilty pleas for any fair and just reason.

[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.